STATE, Respondent, v. CLARKE, Appellant.

*No. State 64. Argued November 6, 1970.—Decided December 1, 1970.*
(Also reported in 181 N. W. 2d 355.)

For the appellant there were briefs and oral argument by *James H. McDermott,* state public defender.

For the respondent the cause was argued by *Theodore J. Hodan,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

HEFFERNAN, J.    Defendant claims numerous errors or abuses of discretion which he contends made his conviction a manifest injustice.

*Did the court abuse its discretion by denying defendant's motion for a change of venue*

Prior to trial and pursuant to sec. 956.03, Stats., the defendant moved for a change of the place of trial. Sec. 956.03 (3), provides:

"COMMUNITY PREJUDICE. If a defendant who is charged with a felony files his affidavit that an impartial trial cannot be had in the county, the court may change the venue of the action to any county where an impartial trial can be had. . . ."

Attached to the defendant's motion for change of venue were six newspaper clippings related to the defendant's case. The clippings were recognized by the judge as being from two Milwaukee papers. Three of the clippings referred to an earlier hearing to suppress lineup identification. Another stated that there was an attempted rape and a robbery of a fifty-five year old woman in "the 200 block of E. Center st." However, neither the name of the assailant nor the victim was stated. Other articles named Clarke as having been identified by the fifty-five year old woman and also stated that Clarke was involved in other rape and robbery charges. Another clipping bore the heading, "Arrests Solve Rape Cases, Police Say." In that article, it is stated that Clarke was charged with two counts of rape and two of armed robbery. The police are quoted as saying that two rapes and an attempted rape were solved with the arrest of the suspect.

The motion for change of venue was denied, but the trial judge concluded that the effects of these stories could best be analyzed on *voir dire.*

We have frequently said that a motion for a change of venue is directed to the discretion of the trial court and that this court will not interfere unless an abuse of that discretion is demonstrated. *State v. Kramer* (1969), 45 Wis. 2d 20, 171 N. W. 2d 919; *State v. Laabs* (1968), 40 Wis. 2d 162, 161 N. W. 2d 249; *Miller v. State* (1967), 35 Wis. 2d 777, 151 N. W. 2d 688; *State v. Nutley* (1964), 24 Wis. 2d 527, 129 N. W. 2d 155, certiorari denied, 380 U. S. 918, 85 Sup. Ct. 912, 13 L. Ed. 2d 803.

In *State v. Kramer, supra,* we undertook an extensive review of this court's history and policy in regard to

motions for change of venue. We pointed out that this court places much weight on the trial judge's appraisal of community prejudice and that his judgment reflects consideration of many factors that cannot be revealed in the pages of the record. We therein discussed the American Bar Association Standards Relating to Fair Trial and Free Press, which are critical of overdeference to the trial judge's determination in this respect. We concluded that the proper test on the review of the trial judge's exercise of discretion with respect to such motion is:

"If the evidence elicited, properly considered, gives rise to the reasonable likelihood that a fair trial cannot be had, it is an abuse of discretion to fail to grant a change of venue." *State v. Kramer, supra,* page 30.

We have carefully examined the record herein, and we find that there is no evidence that these rather short articles infected the community with prejudice. No evidence has been presented to show a reasonable likelihood that a fair trial could not be held in Milwaukee county.

*Did the failure to report the voir dire of prospective jurors violate the defendant's right to due process*

The defendant makes no assertion that there was difficulty in drawing a jury or that anything transpired during the course of the *voir dire* that would show prejudice. He merely relies on the blanket assertion that, since there was no transcription of the *voir dire,* that in itself should be evidence of lack of due process, since an appellate court cannot then make a determination of whether pretrial publicity had so infected the jurors as to make a fair trial impossible. In *State v. Kramer, supra,* we considered this identical problem in regard to a *voir dire.* In *Kramer,* also, the *voir dire* was not reported, and the claim was made that, even in the ab-

sence of a request by counsel, it was the obligation of the trial judge sua sponte to direct the reporting of the examination of the jurors. We pointed out in *Kramer, supra*, page 34, that, since there was no demand at the time of trial that the *voir dire* be reported, exception to the judge's failure to order its reporting cannot be made on appeal. Since the trial of the instant case, the statutes have been amended (sec. 256.55 (3), Stats.) to provide that *voir dire* examinations in any civil or criminal action need not be reported unless ordered by the court. We pointed out in *Kramer*, however, that, even in the absence of statutory authority, the trial judge had the inherent power to order the reporting of a *voir dire* and, in the absence of a request for the court to order a reporting, a defendant cannot make a claim of error.

*Did the trial court commit error by permitting testimony relating to the lineup and in-court identification of the defendant by the victim*

On direct examination the victim identified the defendant as her assailant. She also testified that she had identified him in a lineup on the day following the incident and, at that time, she recognized his voice as being that of her assailant. The prosecution did not attempt to show that an earlier identification had been made in the victim's home on the basis of a photograph. This was brought out only on cross-examination when, pursuant to questions of defense counsel, the following colloquy took place:

"*Q.* How many pictures did the officer show you?
"*A.* Well, he had some in his hand, but when he pulled this picture out I recognized it right away.
"*Q.* He just showed you one picture, is that correct?
"*A.* Well, he was probably going to show me more, but I stopped him right there. I identified him just right then and there.

"*Q*. But he just showed you one picture?
"*A*. At the particular time, yes."

No attack is made directly upon the single photograph identification. Since the testimony regarding "photographic confrontation" was not offered, nor admitted, in evidence by the state, the question of its admissibility is not directly in question.

### *Was the single photographic identification procedure impermissibly suggestive*

The public defender on appeal argues that the photographic identification was impermissibly suggestive, and therefore the lineup and in-court identifications are tainted.

The United States Supreme Court dealt with photographic identifications in *Simmons v. United States* (1968), 390 U. S. 377, 88 Sup. Ct. 967, 19 L. Ed. 2d 1247. In that case, police officers exhibited to eyewitnesses a number of group snapshots which contained photographs of two robbery suspects. Each of the witnesses identified Simmons as one of the robbers. At the trial the United States did not offer testimony regarding the picture identification but relied entirely upon in-court identification by the eyewitnesses. Simmons contended that these identifications were not independent of the impermissibly suggestive photographic identification. The supreme court, at pages 383, 384, discussed this problem, saying:

"It must be recognized that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect,

there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification."

Nevertheless, the court held that photographic identification is a widely used and effective identification procedure, and it refused to make a rule prohibiting the practice. It stated, at page 384:

". . . each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

In *Simmons,* the court held that the photographic identification procedure was permissible in view of the fact that they were shown to the witnesses just one day after the robbery, when their memories were fresh, that several pictures were presented, and that the witnesses were separated at the time of the identification. Furthermore, there was no evidence to indicate that the police advised the witnesses that any of the subjects photographed were under suspicion. The court also considered the necessities of the situation, pointing out that, at the time of the identification, the criminals were still at large and that it was necessary for the police to act swiftly. In the instant case, but one photograph was

displayed to the victim, although it is undisputed that the identification was made from a pack of several which the police officer was prepared to show the rape victim.

In *Stovall v. Denno* (1967), 388 U. S. 293, 87 Sup. Ct. 1967, 18 L. Ed. 2d 1199, not a picture-identification case, the United States Supreme Court held that a "one-on-one" confrontation procedure was not necessarily violative of due process. The suspect was brought to the victim's hospital room at a time when it was believed that she was in danger of death. The court pointed out that, although the showing of a single suspect to a witness is widely condemned, the "totality of the circumstances" should be considered and that, under the circumstances, the police did the only reasonable thing and there was no denial of due process.

The Seventh Circuit Court of Appeals in *United States v. Gilmore* (1968), 398 Fed. 2d 679, held that, under the circumstances there, a one-man lineup was unnecessarily suggestive. There, the only eyewitness to a robbery identified Gilmore and he was equivocal about the identification. At trial, however, the witness stood by his lineup identification, saying, ". . . when I seen him something told me what he looked like." The court of appeals applied the "totality of the circumstances" test of *Stovall* but distinguished it, pointing out that there were no facts in the case under consideration which justified or excused the exhibition of a single person. Under the circumstances of *Gilmore,* they found there was a denial of due process.

Nevertheless, the court of appeals has upheld a single photographic identification procedure in *United States v. Cox* (7th Cir. 1970), 428 Fed. 2d 683. In that case an officer was able to view a portion of the defendant's face during a chase following a robbery. The officer was shown four photographs of Cox, and he immediately identified him as the man who had fled the scene. Using the "totality of the circumstances" test, the court of ap-

peals said that the procedure was not impermissibly suggestive, because the defendant was still at large.

These cases are, of course, not controlling in the instant case, but they are evidence of a consistent line of reasoning by the United States Court of Appeals and the United States Supreme Court that a single-photograph identification does not ipso facto result in a denial of due process.

In the instant case, the record is silent as to whether or not the defendant was actually in custody at the time the photographs were shown. Moreover, there is nothing to indicate that the photograph itself was in any way suggestive. It is undisputed that the officer brought more than one picture for the victim to view. The presence of the other photographs, even though they were not shown to the victim, removes much of the suggestiveness that might be inherent in the showing of a single picture, especially since the victim testified that she thought the officer intended to show her more pictures. There was no indication that the officer suggested that the man whose photograph was shown was a suspect or that he was in custody. In the instant case defense counsel's interrogation revealed the pretrial photographic identification. As is pointed out in *Cox, supra,* page 686, the hazards of a photographic identification procedure can be thoroughly examined by proper cross-examination. In the instant case, the defense counsel had ample opportunity for the exploration of the photographic procedure. We are satisfied that in the "totality of the circumstances" the procedure used here, though less than ideal, was not impermissibly suggestive. Certainly, in applying the test of *Simmons, supra,* we see no evidence of a "very substantial likelihood of irreparable misidentification."

Having so concluded, the argument that the photographic identification tainted the subsequent in-court and lineup identifications must also fail. There is no

argument made that either the lineup procedures or the in-court identification were other than constitutionally antiseptic.

We should also point out that the evidence adduced at trial indicates that the identification of the defendant in the lineup and in court were based on the victim's observations at the time of the crime. She stated that she had seen her assailant "very good" and that the light was very good in the alley. The identification at the lineup was the following day while her memory was fresh. The in-court identification was unequivocal, although there was evidence that she was not sure whether he had a mustache, a goatee, or long or short sideburns. This does not vitiate her positive identification that Clarke was her assailant.

It should be pointed out in passing that no objection was made to the testimony regarding the lineup or the in-court identification. We are satisfied that the defendant, having failed to enter a timely objection, has waived his right to raise the question of the lineup on appeal. Again, it would appear, however, that the only argument to be raised in respect to the lineup, even were proper motions made, was whether the identification there was suggested by the prior photographic identification. We conclude that it was not.

*Was it error to permit the state to introduce
defendant's trousers into evidence*

At the trial the trousers, which were removed from the defendant at the time of arrest, were introduced into evidence. Testimony showed that the trousers gave evidence of seminal stains. The public defender contends that the seizure was without warrant and not incident to the defendant's arrest for rape, but was rather for an arrest on a parole violation. He therefore concludes that the search was illegal, inasmuch as a search for "mere

evidence" must be for evidence related to the crime for which the arrest is made and not evidence of some other crime for which no probable cause for arrest exists at the time. The controlling fact, however, is that the defendant did not object to the introduction of the trousers into evidence.

In *Bradley v. State* (1967), 36 Wis. 2d 345, 359, 153 N. W. 2d 38, 155 N. W. 2d 564, we pointed out that even a constitutional right will be deemed waived unless timely raised in the trial court. The public defender recognizes this but argues that this court also concluded in *Bradley,* at pages 359, 359a, that it may ". . . decide a constitutional question not raised below if it appears in the interests of justice to do so and where there are no factual issues that need resolution." This is undoubtedly correct. We see, however, no persuasive argument why the interests of justice warrant consideration of the issue. As the state points out, there was testimony that the assailant was wearing dark trousers, and it appears that the trousers in question were not dark. Moreover, the coat did not have a half-belt in the back, as the victim initially testified. It appears reasonable to conclude that, for purposes of strategy, the trial counsel desired these items of clothing to be brought before the jury in an attempt to point out the inconsistency of some of the identification testimony. By the failure to object at trial, the defendant has waived his right to suppress the evidence revealed by the trousers.

*Was the defendant denied his right to be present at trial by failure to include him in two in-chambers conferences*

It appears that during the course of trial, defense counsel on cross-examination asked a police officer the reason the defendant was taken into custody. The dis-

trict attorney objected to the question as being "beyond the scope of the direct" and calling for possibly inadmissible testimony. The record indicates that a brief conference was then held in chambers between court and counsel. The record shows no reason for the conference. Immediately thereafter, however, defense counsel withdrew the question. Subsequently, another in-chambers conference was held between court and counsel in the absence of the defendant.

The United States Supreme Court has held that a defendant's presence is a necessary element of due process, but only to the extent that a fair and just hearing would be thwarted by his absence. *Snyder v. Massachusetts* (1934), 291 U. S. 97, 54 Sup. Ct. 330, 78 L. Ed. 674.

This problem was extensively discussed in *Ramer v. State* (1968), 40 Wis. 2d 79, 84, 161 N. W. 2d 209. We therein stated, ". . . whether the defendant has a right to attend a conference in chambers . . . admits of no categorical 'yes' or 'no' answer." We pointed out, at page 85, that, "When a conference in chambers deals solely with a question of law or preliminary matters of procedure," the defendant's absence does not constitute a denial of due process.

In the instant case, the public defender theorizes that the decision made in the first conference concerning the state's objection to a question required the defendant's presence. He concludes that defense counsel's decision to withdraw the question was a tactical decision and, therefore, the defendant's presence was necessary. The public defender, however, gives no reason why this court should conclude that even a tactical decision on an evidentiary matter was one in which counsel or the court would be aided by the presence of the defendant. In the second off-the-record conference there is no intimation from the record why the *in camera* proceedings were held. Shortly after the second conference, Attorney

Robert Beaudry testified in regard to certain statements he had overheard in a conversation between the victim and one of the police officers.

We find nothing in this case that suggests that decisions were reached in these conferences which required the defendant's presence. We repeat our admonitions of *Ramer v. State, supra,* pages 85, 86, wherein we said:

". . . conferences of the court and attorneys outside the presence of the accused should be rarely held during the trial and the trial judge should be solicitous in allowing the defendant to be present at a conference in chambers when he requests it. There is always a risk of the conference exceeding a nonconstitutional scope or causing misunderstanding."

Certainly, there may be many breaks taken in the course of a trial in which counsel confer in chambers in regard to matters that have nothing whatsoever to do with the case at trial. We believe, however, that in such instances the judge should insert a statement in the record that the conference did not entail matters involving the case then being heard. If, in fact, the conference involves any issue in the case, the trial judge should be solicitous in permitting the defendant to be present. If a fair and just trial would be thwarted by his absence, his presence is mandatory. *Snyder, supra.* We recommend that a record be kept of what transpires at a conference involving issues of the case where the defendant is present. *Hansen v. State* (1968), 40 Wis. 2d 195, 161 N. W. 2d 289; *State v. Wolfe* (1970), 46 Wis. 2d 478, 175 N. W. 2d 216. If it is concluded by counsel and the judge that the presence of the defendant is neither desirable nor necessary, the subject matter of the conference should be briefly reported in a notation on the record. We cannot conclude from the facts presented that there was any infringement of the defendant's right to be present at trial.

*Was the evidence sufficient to support a*
*finding of guilt beyond a reasonable doubt*

Much of the testimony has been detailed in the statement of facts and evidence discussed in regard to the identification and lineup questions. We are satisfied that the evidence adduced in this trial, believed, and rationally considered by the jury was sufficient to prove the defendant's guilt beyond a reasonable doubt. The public defender, however, attempts to cast doubt upon the identification testimony of the victim, because Attorney Robert Beaudry testified that, as he was entering the courtroom just prior to the preliminary hearing, he overheard the victim and Police Detective Thelen talking. Beaudry testified:

". . . she wasn't sure that it was him and he said 'Well, today is the day that you better make up your mind—it's either one way or the other.' And she said 'I'm not sure.' "

While a conversation between Thelen and the victim was admitted, the police officer's version was different. He stated that in the conversation the victim said, " 'I would never forget that face.' " Both of these points of view were put before the jury. It is evident that they chose not to place great weight on the impeaching statements reported by Attorney Beaudry. The question is one of credibility of witnesses, and it is apparent that the jury considered the Beaudry testimony insufficient to undermine the credence to be placed in the victim's testimony. *State v. Stevens* (1965), 26 Wis. 2d 451, 132 N. W. 2d 502.

The public defender also presents the bizarre argument that the rape was not forcible, in that she did not physically resist and during intercourse uttered equivocal sounds, which the public defender contends

were arguably sounds of "venereal pleasure." Sec. 944.01 (2), Stats., defines "by force and against her will" as meaning "either that her utmost resistance is overcome or prevented by physical violence or that her will to resist is overcome by threats of imminent physical violence likely to cause great bodily harm." The victim testified that the assailant had a gun in his hand and, at the time he engaged in sexual intercourse, the gun was sticking in her side. She stated that she submitted to him "out of fear" because she was afraid he might kill her.

In *State v. Hoffman* (1938), 228 Wis. 235, 240, 280 N. W. 357, we said:

"It therefore clearly appears that 'the fear' which renders the utmost resistance unnecessary is a 'fear of death or great bodily harm,' a 'fear of great personal injury,' or 'serious personal injury,' a fear that 'so overpowers her that she dares not resist,' a 'fear and terror so extreme as to preclude resistance,' a fear which renders her mind 'well nigh incapable of continuing her resistance to repel him.' The fear therefore must not only be real but so great as to terrify her and render her practically incapable of resistance."

The "fear" caused by an assailant brandishing a gun in an alley and thrusting it against the victim's ribs meets this test beyond a reasonable doubt.

*Did the prosecution suppress evidence,*
*thereby denying due process*

During the course of the cross-examination of the prosecuting witness, defense counsel brought up the matter of picture identification. Counsel asked, "But he just showed you one picture?" to which the victim responded, "At the particular time, yes." The public defender now argues that this statement carries with it the implication that other pictures were shown to her at some other time and that, since the state did not in-

troduce testimony regarding the showing of other pictures, this court should assume that the prosecution suppressed testimony favorable to the defendant.

A number of cases have discussed the responsibility of the state in respect to coming forward with important information in exclusive possession of the state which would bear upon the guilt or innocence of the defendant. In *Brady v. Maryland* (1963), 373 U. S. 83, 87, 83 Sup. Ct. 1194, 10 L. Ed. 2d 215, the United States Supreme Court said:

". . . the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

In the concurring opinion of Mr. Justice FORTAS in *Giles v. Maryland* (1967), 386 U. S. 66, 87 Sup. Ct. 793, 17 L. Ed. 2d 737, it was stated that, where there is a deliberate withholding of material information, the demand for production of the evidence is not necessary.

However, in the instant case, there is nothing in the record which would indicate the materiality of undisclosed information. In fact, the public defender's contention that there was any undisclosed information is pure speculation. We are obliged to reject these contentions on the ground that there has been no showing whatsoever that the prosecution failed to disclose any information material to the case. It is also clear that, if the statement of the victim was pregnant with the admission that there was undisclosed information, defense counsel could have pursued the matter then and there. He failed to do so. An important factor in determining there was no denial of due process is the fact that defendant failed to pursue information that was available to him. *United States v. Wilkins* (2d Cir. 1964), 326 Fed. 2d 135.

We are satisfied from a review of the entire record that the trial was free of constitutional error, that the

evidence was sufficient to convict the defendant beyond a reasonable doubt, and that there is no evidence that the conviction and sentencing of the defendant constituted a manifest injustice.

*By the Court.*—Judgment and order affirmed.