MAY, Plaintiff in error, v. STATE, Defendant in error.†

Court of Appeals

*No. 77–853–CR. Argued November 30, 1978.—*
*Decided August 23, 1979.*
(Also reported in 283 N.W.2d 460.)

† Petition to review granted.

542

For the plaintiff in error there were briefs by *Howard B. Eisenberg,* state public defender, and *Jack E. Schairer,* assistant state public defender, and oral argument by *Jack E. Schairer.*

For the defendant in error there was a brief by *Bronson C. La Follette,* attorney general, and *Betty R. Brown,* assistant attorney general, and oral argument by *Betty R. Brown.*

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J.   Defendant was convicted of delivering a controlled substance, amphetamine, party to a crime, contrary to secs. 161.41(1)(b) and 939.05, Stats.,[1]

[1] Section 939.05(2), Stats., provides,
A person is concerned in the commission of the crime if he:
(a) Directly commits the crime; or
(b) Intentionally aids and abets the commission of it; or
(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw.

following a jury trial. Writs of error were issued to review the judgment of conviction and denial of the defendant's postconviction motion.

We deem the issues to be as follows:

1. Was it error for the court to respond to a written inquiry by the deliberating jury in the absence of counsel?

2. Was it error for the court to respond in the absence of defendant?

3. Is a past act of aiding and abetting affected by withdrawal from a conspiracy?

4. Was defendant's right to a unanimous verdict violated because the jury was not required to specify whether defendant was guilty as a participant or as a conspirator or as an aider and abettor?

Officer Dandurand, a narcotics agent, testified that May 4, 1977, he went to the apartment occupied by defendant and Ms. Cheryl Olson to purchase "speed," an amphetamine. Cheryl Olson was in the living room watching TV. The officer paid defendant $2 each for the five capsules which, it developed, were in fact not amphetamines. Defendant said that in a couple of days he would have "black cadillacs," another amphetamine. The officer returned two days later, May 6, and was admitted to the apartment by Ms. Olson. The officer asked if the black cadillacs had arrived. Ms. Olson responded she did not know and that he should contact defendant. The officer telephoned the apartment that evening. Defendant said he had only ten black cadillacs and that the price was $3.50 each. The officer asked if he could come immediately to the apartment. Defendant said that was okay. The officer arrived at the apartment in about thirteen minutes. Ms. Olson admitted him to the apartment. The officer told her he had called about the black cadillacs. She produced a plastic container which contained capsules and picked out ten capsules for which the officer paid her $35. The defendant was in the room about ten feet from where the transaction was taking

place but did not participate. The capsules contained amphetamine. Defendant and Ms. Olson were each charged with delivering a controlled substance, party to a crime, as a result of the May 6 transaction.

Ms. Olson pleaded guilty. She testified that she and defendant had a close relationship and lived together intermittently for about one and one-half years. Defendant acted as a middleman by telling others that Ms. Olson had prescription drugs if they wanted such drugs. Ms. Olson told defendant prior to the May 4, 1977, sale that he should attempt to sell what she believed to be cold tablets as "something else" because she needed money. She was present in the apartment during that transaction with the officer and the proceeds of the sale were given to her by the defendant. Defendant told her that the officer was interested in different types of "speed" and wanted "cadillacs," a stronger type. She told defendant she would try to obtain some in the next couple of days and did so May 5. After defendant completed his telephone conversation with the officer May 6, 1977, defendant told her he suspected a police "set-up" and wanted nothing to do with the officer when he came over and advised her to do the same. Her pressing financial needs were such, however, that she was not concerned about the possibility of her criminal involvement. Ms. Olson did not call defendant to the door when the officer arrived or involve defendant in the actual delivery.

Defendant testified that he has lived with Ms. Olson for about a year and a half. They were unable to live on her welfare checks. He would from time to time facilitate transactions between Ms. Olson and persons who wanted to buy speed. Defendant's marijuana customers would ask if he knew where he could get "speed," he would tell Ms. Olson he had a customer for her and he would sell her speed to his customers on her behalf. Immediately after the May 6 telephone conversation with the officer he changed his mind about going ahead with that transac-

tion. He told Ms. Olson that she should abandon the transaction because he believed the caller was a police officer. Defendant was present when the officer arrived but did not in any way involve himself in the delivery and received nothing from the transaction.

After the jury retired to deliberate the court told counsel to notify the clerk where they would be so that they could be reached if they were needed. Counsel left the courtroom. The jury sent the following note to the court: "By withdrawing from a conspiracy has a person removed themselves [sic] from aiding and abetting the commission of a crime?" The court directed the clerk to answer that question, "No." Defendant's attorney was not present and had no knowledge that the inquiry had been made or that the court had responded.

The jury subsequently sent two more questions to the court:

Your Honor, do actions taken by the principals in the actions leading up to a crime where there is also a person aiding and abetting the principal constitute aiding and abetting in the actual commission of the crime where, a., the principal withdraws from the plans ahead of time, b., the person aiding and abetting takes over as principal, and, c., the former principal has no further part in the crime and desires that the principal not commit the crime?

Can a principal in a crime also aid and abet in that crime?

The court sent a note to the jury asking if it would help if the court reread the instruction. The jury responded in the affirmative. At this point counsel for the state and defendant's counsel were present in the courtroom. The court proposed to reread to the jury the entire instruction as to party to a crime and advised counsel of the first question and the court's response. Both counsel stated that they had no objection. Defendant's counsel added that he had no prior knowledge of the first question and

that the court should either have not answered that question or should have framed a particular instruction which would explain the possible consequences of withdrawal. The court responded that it believed its answer was a correct statement of the law. The jury was recalled. A colloquy followed between the court and the jury in the presence of counsel, as a result of which the court reread to the jury the instructions that dealt with party to a crime. No objection was made to that reading.

1. *Error To Respond To Jury Inquiry In Absence Of Counsel*

Counsel's right to be present when a jury requests additional instructions may be waived. What amounts to waiver depends upon the circumstances in the particular case. Counsel assume the risk of their arrangements to be called if they are absent from the courtroom. The trial court may presume a waiver from counsel's absence unless the judge knows to the contrary or has personally taken the responsibility to see that counsel is notified. *State v. Stewart,* 56 Wis.2d 278, 284, 201 N.W.2d 754 (1972) ; *State v. Russell,* 5 Wis.2d 196, 200, 92 N.W.2d 210 (1958).

The trial court undertook personal responsibility to contact counsel and erred in failing to do so when the jury inquired as to the effect of withdrawal. Although the clerk was to contact counsel if they "needed" to be reached, the clerk could not make that decision. As the court had to make that decision, the court personally undertook the responsibility to see that counsel were notified. The court appears to have concluded that counsel were not needed when the jury asked for further instructions as to withdrawal. That issue was critical to the defense. Counsel should have been given an opportunity

to confer with the court as to the appropriate response. It was error not to give counsel that opportunity.[2]

Because, however, we hold that withdrawal from a conspiracy does not affect aiding and abetting, defendant was not prejudiced by the response and the error was harmless. *Cf. State v. Stewart,* 56 Wis.2d 278, 284–85 (communication by judge to jury must constitute prejudicial error for reversal or new trial).[3]

2. *Defendant's Right Of Presence At Trial Not Violated*

Defendant was not present when the court received and responded to the jury's first question. Defendant argues that his absence denied him due process under the fourteenth amendment to the United States Constitution and art. I, sec. 8 of the Wisconsin Constitution and that it violated sec. 971.04, Stats.

The question posed by the jury was one of law. Defendant's absence from the trial during a hearing on a question of law is not a denial of due process. *State v. Clarke,* 49 Wis.2d 161, 175, 181 N.W.2d 355 (1970) ; *Ramer v. State,* 40 Wis.2d 79, 85, 161 N.W.2d 209 (1968), *cert. den.* 394 U.S. 989 (1969).

---

[2] *Spencer v. State,* 85 Wis.2d 565, 271 N.W.2d 25 (1978), held that a defendant was denied his constitutional right to assistance of counsel when the court accepted a verdict in counsel's absence. *Spencer* contains broad language to the effect that trial counsel must be present at all critical stages unless the presence of counsel is knowingly waived by the client and such waiver is approved by the court. *Spencer* does not refer to *State v. Stewart,* 56 Wis. 2d 278, and *State v. Russell,* 5 Wis.2d 196. We find no intent in *Spencer* to overrule those precedents.

[3] If the error was constitutional under *Spencer v. State, supra,* it does not require reversal. It meets the "harmless beyond a reasonable doubt" test of *Chapman v. California,* 386 U.S. 18, 24, *reh. den.* 386 U.S. 987 (1967), because the court correctly responded to the jury's inquiry.

Section 971.04(1), Stats., provides in relevant part that the defendant shall be present "at trial." The Criminal Rules Committee which redrew the rules of criminal procedure comments on sec. 971.04 as follows: "This is designed to clarify rules for attendance of defendant at various stages in criminal proceedings. This section recognizes that at certain hearings, such as arguments on matters of law and calendaring, a defendant need not be present." As we hold that an argument on a matter of law is not a part of the "trial" within the meaning of sec. 971.04(1), defendant's absence during this stage of the proceeding did not violate the statute.

3. *Aiding And Abetting Not Affected by Withdrawal From Conspiracy*

The court correctly instructed the jury that a person who withdraws from a conspiracy does not remove himself from aiding and abetting.

The elements of conspiracy are (1) the existence of an agreement between two or more persons to direct their conduct toward realization of a criminal objective and (2) each member of a conspiracy consciously intends the realization of the particular criminal objective. *State v. Nutley,* 24 Wis.2d 527, 556, 129 N.W.2d 155 (1964), *cert. den. sub. nom. Nutley v. Wisconsin,* 380 U.S. 918, *sub. nom. Welter v. Wisconsin,* 380 U.S. 922 (1965). The elements of aiding and abetting are that a person (1) undertakes conduct which as a matter of objective fact aids another person in the execution of a crime and (2) that the person consciously desires or intends that his conduct will yield such assistance. *State v. Nutley,* 24 Wis.2d 527, 554–555.

Assistance is the essence of aiding and abetting. Assistance, once given, is an accomplished fact. If the

other elements are met, the completed act of aiding and abetting has occurred.

The same may be said of an agreement which is the essence of conspiracy. The legislature, however, in sec. 939.05(2)(c), Stats., has expressly provided that a conspirator may undo that which he has done. He does so only by meeting the conditions of an effective withdrawal from the conspiracy.

The right to withdraw from a conspiracy is appropriate because, "One of the objectives of the criminal law is to prevent crime, and thus it is desirable to provide an inducement to those who have counseled and aided a criminal scheme to take steps to deprive their complicity of effectiveness." LaFave and Scott, *Handbook on Criminal Law* sec. 65 at 519, 520 (1972). It may be that this objective would be met by permitting withdrawal from aiding and abetting. Section 939.05(2)(b), Stats., however, is silent as to withdrawal from aiding and abetting. We construe that silence as a decision that an aider and abettor, unlike a conspirator, may not undo his completed act by withdrawal.

The differences between conspiracy and aiding and abetting may blur in some circumstances. *Holland v. State,* 91 Wis.2d 134, 142, 280 N.W.2d 288 (1979). Such is not the case on the facts before us. The jury could find that defendant terminated his prearrangement with Ms. Olson by which she was to sell speed to the officer through defendant. Defendant's assistance to Ms. Olson, however, was given prior to termination of that agreement. He did not prevent that assistance from becoming effective. That assistance constituted aiding and abetting: procuring a purchaser to buy amphetamines from Ms. Olson, directly or indirectly, with intent to assist her to make a

sale which was consummated. *State v. Boutch,* 60 Wis.2d 397, 210 N.W.2d 751 (1973). His complicity. as an aider and abettor was completed before his withdrawal from the conspiracy.

4. *Unanimity Not Required As To Alternate Conceptual Elements*

Section 939.05(2), Stats., provides, in substance, that a person is concerned in the commission of a crime if he directly commits the crime or aids and abets its commission or is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it.

Defendant argues that under the rationale of *United States v. Gipson,* 553 F.2d 453 (5th Cir. 1977), the jury should have been instructed that they must unanimously agree as to whether the defendant was a principal or a conspirator or an aider and abettor. The defendant in *Gipson* was accused of violating a federal statute imposing criminal liability on one who "receives, conceals, stores, barters, sells or disposes of" a stolen vehicle in interstate commerce. The circuit court divided the six acts prohibited by the statute into two "conceptual groups": the first group consisted of receiving, concealing and storing and the second group consisted of bartering, selling and disposing. The court held that although the jury need not be unanimous as to whether the defendant committed any particular one of the six acts, under the sixth amendment to the United States Constitution, unanimity was necessary as to whether defendant's acts came within one conceptual group or the other.

We are not required to follow *Gipson. Johnson v. Louisiana,* 406 U.S. 356 (1972), and *Apodaca v. Oregon,* 406 U.S. 404 (1972), held that the requirement of unanimity in a federal criminal jury trial is not binding upon the states.

Defendant argues that failure to instruct the jury that it must be unanimous as to whether defendant was a principal or a conspirator or an aider and abettor, violates the Wisconsin Constitution. Article I, secs. 5 and 7 of the Wisconsin Constitution guarantee the right to trial by jury. The decisions of the Wisconsin Supreme Court have long assumed that trial by jury in a criminal case includes the right to a unanimous verdict. *Holland v. State,* 91 Wis.2d 134, 138.

The court held in *Holland v. State,* where the same argument was made that, "Unanimity is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged, and unanimity is not required with respect to the alternative means or ways in which the crime can be committed." 91 Wis.2d 134, 143. The court continued at 144:

Here we have a single offense for which the defendant could be found liable in three alternative ways—direct commission, aiding and abetting, and conspiracy—when the jury unanimously concluded the defendant was guilty of second-degree murder. The jury unanimously found participation, and it was not necessary that it be agreed as to the theory of participation.

We hold that the trial court did not err in failing to instruct the jury that it must be unanimous as to whether the defendant was a participant or a conspirator or an aider and abettor.

*By the Court.*—Judgment and order affirmed.