STATE of Wisconsin, Plaintiff-Respondent,

v.

Anthony GLENN, Defendant-Appellant.†

Court of Appeals

*No. 93–2918–CR. Oral argument August 4, 1994.—Decided December 13, 1994.*

(Also reported in 526 N.W.2d 752.)

† Petition to review granted.

For the defendant-appellant there were briefs and oral argument by *William J. Tyroler*, assistant state public defender.

For the respondent-respondent the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Stephen W. Kleinmaier*, assistant attorney general. There was oral argument by *Stephen W. Kleinmaier.*

Before Sullivan, Fine and Schudson, JJ.

SCHUDSON, J. Anthony Glenn appeals from the judgment of conviction, following a jury trial, for intermediate aggravated battery, party to a crime. He

156

argues that the trial court erred in denying his request for a jury instruction on the lesser-included offense of battery. We affirm.

For purposes of the issue on appeal, the relevant facts are not in dispute. On the night of June 30, 1990, Robert Massaro and three friends were sitting at the end of one of the long breakwater piers extending from the Milwaukee shoreline into Lake Michigan. Glenn, along with three companions, Steven Brown, Jon Matthews, and Anthony Kimber, arrived at the end of the pier and became involved in a confrontation with Massaro and his friends. Two members of Glenn's group hit Massaro and a third member threw him to the ground. Massaro then fled toward the shore. Steven Brown ran after Massaro and, according to the testimony of a number of witnesses, Glenn and his other two companions walked and/or ran behind them. Before anyone caught up to Massaro, he jumped into the lake and drowned. Additional factual details will be described as they relate to our discussion of the issue.

The State prosecuted Glenn and his companions for intermediate aggravated battery, reasoning that they intended bodily harm to Massaro but caused great bodily harm when he jumped to his death. Counsel for Glenn, however, requested that the trial court also instruct the jury on the lesser-included offense of simple battery. Counsel argued that the jury "could reasonably acquit on the causal relationship between the original battery and causing the great bodily harm . . . and yet still convict on the misdemeanor battery charge."

The trial court denied the request, reasoning:

> [T]he issue isn't solved merely by determining that the crime charged includes the lesser offense. One has to do an analysis, and here we have a situation

157

more like the case in <u>State v. Wilson</u>, [149 Wis. 2d 878, 440 N.W.2d 534 (1989)], where the defendant presented exculpatory testimony as to the charged offense, but requests a lesser-included offense. If his testimony is to be believed, he should be acquitted of the charge completely. His theory of the lesser-included offense is directly counter to his own version of the facts; and, as the [Wisconsin Supreme] Court has pointed out . . ., in deciding this action the Court can disregard the defendant's testimony and look at the evidence that was presented, and on the evidence as presented, there's no basis for a conviction of this defendant of a lesser-included simple battery because there's no dispute that the resulting injury to Mr. Massaro was great bodily harm.

A challenge to a trial court's refusal to submit a lesser-included offense instruction presents a question of law which we review *de novo*. *State v. Borrell*, 167 Wis. 2d 749, 779, 482 N.W.2d 883, 894 (1992). "The submission of a lesser-included offense instruction is proper *only* when there exists reasonable grounds in the evidence both for acquittal on the greater charge and conviction on the lesser offense."*Id.* In determining the propriety of a defendant's request for a lesser-included offense instruction, the evidence must be viewed in the light most favorable to the defendant and the instruction. *State v. Chapman*, 175 Wis. 2d 231, 241, 499 N.W.2d 222, 226 (Ct. App. 1993). Further, "the lesser-included offense should be submitted only if there is a reasonable doubt as to some particular element included in the higher degree of crime." *Hayzes v. State*, 64 Wis. 2d 189, 195, 218 N.W.2d 717, 721 (1974). "If the court improperly fails to submit the requested lesser[-]included offense to the jury, it is prejudicial

error and a new trial must be ordered." *Hawthorne v. State*, 99 Wis. 2d 673, 684, 299 N.W.2d 866, 871 (1981).

Battery is committed by one who "causes bodily harm to another by an act done with intent to cause bodily harm to that person or another without the consent of the person so harmed." Section 940.19(1), STATS. Intermediate aggravated battery is committed by one who "causes great bodily harm to another by an act done with intent to cause bodily harm to that person." Section 940.19(1m), STATS. Battery is a lesser-included offense of aggravated battery.

Glenn argues that the evidence established a reasonable doubt as to the element of causation of great bodily harm. He casts the issue:

> The question here, then, is whether a reasonable view of the evidence would assign liability to Mr. Glenn for causing bodily harm (simple battery), but deny liability for causing great bodily harm (intermediate battery). And since the prosecution relied heavily on a party to a crime theory, this inquiry includes asking whether Mr. Glenn was responsible for the great bodily harm others may have caused.

Glenn's argument entails two alternative theories. First, he contends, if one accepts his testimony completely, he is guilty of no crime. He denied participation in the assault at the end of the pier, and he testified that he did not chase Massaro.[1] Second, if one rejects his denial of participation in the battery, but accepts his denial of participation in the chase, he is guilty of

---

[1] In this regard, Glenn disputed his alleged statements to police that he chased Massaro. He testified, "I told Detective Shannon that I was running down the pier." He later testified "No, I didn't chase after Mr. Massaro. Mr. Massaro was already gone."

the battery, but not guilty of conduct causing Massaro's death.

Under Glenn's first theory, he would not be entitled to the lesser-included offense instruction because, accepting his testimony completely, there would be no basis for conviction of either crime—intermediate battery or the lesser-included offense of battery.

Glenn's second theory, however, is more intriguing. It rests on an interpretation of the evidence that would separate the assault into two segments: the battery at the end of the pier, and the subsequent chase and jump into the lake. If a reasonable view of the evidence supports such a separation then, Glenn maintains, under *State v. Wilson*, 149 Wis. 2d 878, 440 N.W.2d 534 (1989),[2] we must disregard his denial of participation in the battery, acknowledge the evidence proving him guilty of the battery, and further acknowledge his denial of any participation in the subsequent chase causing Massaro's death.

Thus, we first consider whether a reasonable view of the evidence supports such a separation. The parties offer no authorities that examine whether an assault can be separated into segments for purposes of analyzing the propriety of a lesser-included offense instruction. They do, however, point to *State v. Giwosky*, 109 Wis. 2d 446, 326 N.W.2d 232 (1982). There, in a case involving one charge of battery, the

---

[2] "[A] defendant or the state may request and receive a lesser-included offense instruction, even when the defendant has given exculpatory testimony, if a reasonable but different view of the record, the evidence, and any testimony other than part of the defendant's testimony which is exculpatory supports acquittal on the greater charge and conviction on the lesser charge." *State v. Wilson*, 149 Wis. 2d 878, 900, 440 N.W.2d 534, 542 (1989).

supreme court considered whether the defendant was denied his right to a unanimous verdict because the trial court did not instruct the jury that it had to agree on whether the defendant committed either of two assaults that occurred in the course of the incident. After the jury convicted Giwosky of a single battery charge, the trial court granted Giwosky's motion for a new trial, viewing the assaults as " 'clearly separate.' " *Id.* at 451, 326 N.W.2d at 235. This court agreed. *See State v. Giwosky*, No. 81-1307-CR, unpublished slip op. (Wis. Ct. App. Apr. 16, 1982). The supreme court, however, reversed concluding, "unanimity requires that the entire jury agree that the defendant intentionally committed *an act* which caused bodily harm. No agreement is required as to *which act* constituted battery because it was a continuous act." *Id.*, 109 Wis. 2d at 451, 326 N.W.2d at 235. The supreme court explained:

> The evidence . . . establishes that the encounter was a short continuous incident that can not be factually separated. . . . [T]he entire episode lasted no longer than two minutes. . . . [T]here was no "break in the action" and the confrontation continued until the defendant had incapacitated [the victim]. . . . After all, every blow that is struck in an altercation such as this is not a separate incident. The jury could properly consider it as one continuous event.

*Id.* at 456-457, 326 N.W.2d at 238.

Although it is helpful, *Giwosky* is not controlling. Not only is the precise issue distinguishable but the circumstances of this case are different. Unlike *Giwosky* where the supreme court stated "that the defendant's behavior constituted one continuous cause of conduct," *id.* at 451, 326 N.W.2d at 235, in this case, witnesses estimated the time between the assault and

161

the jump into the lake to be a few minutes.[3] This incident covered a distance that witnesses estimated to be the length of a football field or several city blocks, unlike *Giwosky* where the assault took place within a smaller area. Additionally, unlike *Giwosky* where only two people were directly involved in the assault, here there were numerous participants whose actions not only covered considerably greater time and distance, but whose specific participation remained unknown to witnesses who, in the darkness, were unable to distinguish one actor from another.

Would these distinguishing factors lead a jury to conclude that Glenn committed the battery but nothing more? Not necessarily. After all, his involvement in the original offense could very well constitute "a substantial factor in producing the great bodily harm." WIS J I—CRIMINAL 1227. Here, as in *Giwosky*, the jury "could properly consider it as one continuous event." *Giwosky*, 109 Wis. 2d at 457, 326 N.W.2d at 238. What the jury "could properly consider," however, is not the issue in determining whether a lesser-included offense instruction is required. Instead, we must view the evidence in the manner most favorable to Glenn and his theory supporting the instruction. When we do so, we

---

[3] We note, however, that the victim in *Giwosky* testified that he was walking in a river when he was hit by a log thrown at him by Giwosky, who was standing on the shore. *State v. Giwosky* 109 Wis. 2d 446, 448, 326 N.W.2d 232, 234 (1982). "[The victim] then climbed out of the river. He ran up to [Giwosky] and said, 'Are you crazy, throwing a log,' or words to that effect." *Id.* After that verbal confrontation, Giwosky hit and kicked the victim. *Id.* at 448-449, 326 N.W.2d at 234. In light of this, the "continuity" of the assault in *Giwosky* may have more similarity to that of the instant case than the supreme court's characterization otherwise might imply.

see reasonable evidence supporting his theory that his involvement in the battery was separate from the subsequent events.[4]

Although the State's factual theory of causation rested not only on the original assault, but also, on the pursuit, the State's proof, as a matter of law, did not depend on *Glenn's* pursuit of Massaro. Under *May v. State*, 91 Wis. 2d 540, 283 N.W.2d 460 (Ct. App. 1979), *affirmed on other grounds*, 97 Wis. 2d 175, 293 N.W.2d 478 (1980), if Glenn participated in the battery but did *not* pursue Massaro, he still was a co-actor aiding the subsequent acts of any of his accomplices who did pursue Massaro and caused him to jump into the lake. A careful analysis of *May* makes this clear.

May was convicted of delivering a controlled substance, party to a crime. *May*, 91 Wis. 2d at 543, 283

---

[4] The State points to 6A C.J.S. *Assault & Battery* § 126, at 549 (1975), which states, "An instruction permitting the conviction of accused as a principal upon proof of an act entirely different from that charged in the indictment or information is erroneous." Here, however, *according to the State's theory of the case*, conviction for the original battery would not be for an "entirely different" act. As the State maintained in its closing argument to the jury:

> What you're to decide is whether or not the conduct of this defendant and his co-actors was a substantial factor, and I submit to you that there's no doubt about that, that young man would not have gone into Lake Michigan that night but for that attack on the end of the pier *and* but for that pursuit by those four young men. (Emphasis added.)

Likewise, on appeal, the State argues, "the victim would not have gone into the lake except for the attack at the end of the pier *and* the pursuit by the defendant and his companions when the victim ran toward the shore." (Emphasis added.) The State never maintained that the death—the great bodily harm—would have been proven without the pursuit.

N.W.2d at 460. He and his companion, Cheryl Olson, arranged to sell drugs to a man who proved to be an undercover narcotics agent. *See id.* at 545, 283 N.W.2d at 461. May testified, however, that he withdrew from the arrangement.

> Immediately after the . . . telephone conversation with the officer he changed his mind about going ahead with that transaction. He told Ms. Olson that she should abandon the transaction because he believed the caller was a police officer. [May] was present when the officer arrived but did not in any way involve himself in the delivery and received nothing from the transaction.

*Id.* at 545-546, 283 N.W.2d at 461-462. We rejected May's challenge to the trial court's instruction, which stated, as paraphrased in our decision, "that a person who withdraws from a conspiracy does not remove himself from aiding and abetting," *id.* at 549, 283 N.W.2d at 463. We held "that withdrawal from a conspiracy does not affect aiding and abetting." *Id.* at 548, 283 N.W.2d at 463. We explained:

> Assistance is the essence of aiding and abetting. Assistance, once given, is an accomplished fact. If the other elements are met, the completed act of aiding and abetting has occurred.
>
> The same may be said of an agreement which is the essence of conspiracy. The legislature, however, in sec. 939.05(2)(c), Stats., has expressly provided that a conspirator may undo that which he has done. He does so only by meeting the conditions of an effective withdrawal from the conspiracy.
>
> The right to withdraw from a conspiracy is appropriate because, "One of the objectives of the criminal law is to prevent crime, and thus it is desirable to provide an inducement to those who have

counseled and aided a criminal scheme to take steps to deprive their complicity of effectiveness." It may be that this objective would be met by permitting withdrawal from aiding and abetting. Section 939.05(2)(b), Stats., however, is silent as to withdrawal from aiding and abetting. We construe that silence as a decision that an aider and abettor, unlike a conspirator, may not undo his completed act by withdrawal.

*Id.* at 549-550, 283 N.W.2d at 463-464 (citation omitted).

Although the facts of *May* are quite different, the progression of May's conduct corresponds closely to the progression of Glenn's conduct:

(1) May assisted Olson in aiding and abetting a drug sale by making arrangements with the agent by telephone. *Id.* at 550, 283 N.W.2d at 464. Glenn assisted in aiding and abetting a battery at the end of the pier.

(2) "The jury could find that [May] terminated his prearrangement with Ms. Olson by which she was to sell speed to the officer . . . ." *Id.* The jury could have found that Glenn terminated his participation in the assault of Massaro.

(3) "[May's] assistance to Ms. Olson, however, was given prior to termination of that agreement." *Id.* Glenn's assistance to his accomplices in the battery at the end of the pier was given prior to his decision not to pursue Massaro.

(4) "[May] did not prevent that assistance from becoming effective." *Id.* Glenn did not prevent his assistance in the battery from becoming effective in causing Massaro to flee.

165

(5) "That assistance constituted aiding and abet-
 ting: procuring a purchaser to buy
 amphetamines from Ms. Olson, directly or indi-
 rectly, with intent to assist her to make a sale
 which was consummated." *Id.* at 550-551, 283
 N.W.2d at 464. Glenn's assistance, directly or
 indirectly, assisted his accomplices in assault-
 ing Massaro.

(6) "[May's] complicity as an aider and abettor was
 completed before his withdrawal from the con-
 spiracy." *Id.* at 551, 283 N.W.2d at 464. Glenn's
 complicity as an aider and abettor in the assault
 leading to Massaro's flight also was completed
 before his withdrawal.

We conclude that *May* controls. In this case, the
State charged and prosecuted Glenn as a party to the
crime under § 939.05, STATS., without further specifica-
tion of the subsection of the statute, and the trial court
instructed the jury under all three theories: directly
committing, aiding and abetting, and conspiring. The
trial court also instructed on withdrawal from a con-
spiracy.[5] Thus, consistent with *May*, the trial court
correctly instructed on withdrawal from a conspiracy.
An additional lesser-included offense instruction on
battery, however, would have been inconsistent with
*May's* holding regarding non-withdrawal by an aider
and abetter.

---

[5] The trial court instructed:

However, if a person voluntarily changes his mind and no longer
desires the commission of the crime, and notifies the other parties
to the conspiracy of his withdrawal within a reasonable time
before the commission of the crime so as to allow such other
parties also to withdraw, he is not to be held accountable for the
acts of such others and cannot be convicted of any crime commit-
ted by such others after such timely notice of withdrawal.

Glenn offers an alternative theory in support of the lesser-included offense instruction. He argues that the battery at the end of the pier and the subsequent events can be separated because "Mr. Massaro's leap from the pier was an independent act, not caused by anyone in Mr. Glenn's party." Glenn maintains that "[i]f Mr. Massaro's rash, injury-causing act was not reasonably foreseeable, then liability may not be assigned to Mr. Glenn."

The State does not disagree with Glenn's argument that "reasonable foreseeability" provides a fair basis on which to evaluate Glenn's theory. The State correctly points out, however, that what otherwise would seem to be entirely unreasonable behavior becomes "reasonably foreseeable" when a victim is fleeing an attacker. As Professors LaFave and Scott explain:

> [I]f A comes at B with an intent to injure but not to kill, causing B to jump to escape the threatened injury, A is liable for manslaughter if B is killed. . . . Such impulsive acts to avoid harm are quite normal, and thus A may be said to be the legal cause of the consequences.

1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 3.12(f)(4), at 407 (1986) (footnote omitted). Although the authorities generally relate to homicide prosecutions, the principles are equally applicable here.

Additionally, recent authorities from other jurisdictions are in accord. *See State v. Selby*, 443 A.2d 1076, 1079 (N.J. Super. Ct. App. Div. 1981) ("a death in attempting to avoid a reasonably apprehended danger of grievous bodily harm is a criminal homicide by an accused who threatened or frightened the victim"); *People v. Kern*, 554 N.E.2d 1235, 1246 (N.Y. 1990) ("it

167

was foreseeable and indeed probable that [victim who was killed when he ran onto six lane highway to escape attackers] would choose the escape route most likely to dissuade his attackers from pursuit"), *cert. denied,* 498 U.S. 824 (1990); *People v. Ramey,* 606 N.E.2d 39, 46 (Ill. App. Ct. 1992) ("it is reasonably foreseeable that a rape victim may attempt to escape and incur harm thereby, thus making her attacker responsible").

"The state is only required to prove beyond a reasonable doubt that the defendants' acts were 'a substantial factor in producing the death.' " *Cranmore v. State,* 85 Wis. 2d 722, 775, 271 N.W.2d 402, 429 (Ct. App. 1978). "A 'substantial factor' need not be the sole cause of death." *State v. Oimen,* 184 Wis. 2d 423, 436, 516 N.W.2d 399, 404-405 (1994). Here, although Glenn argues that "[i]t was for the jury to decide whether it was reasonably foreseeable that Mr. Massaro would jump as he was being chased," he did not request an instruction on the issue of reasonable foreseeability. Absent such an instruction, a lesser-included offense instruction on battery would have been inappropriate.

■

When one person batters another, he or she reasonably foresees that the victim may flee. Even accepting Glenn's theory on appeal that he withdrew from any conspiracy to pursue Massaro, Glenn remained an aider and abettor to the original assault that, as a matter of law under *May,* cannot be separated from Massaro's foreseeable flight. Thus, when Glenn aided and abetted the battery of Massaro he, along with his accomplices, became criminally responsible for the subsequent great bodily harm. The jury instructions were correct. Accordingly, we affirm his conviction for intermediate aggravated battery.

*By the Court.*—Judgment affirmed.