STATE, Respondent, v. WHITE and others, Appellants.

*No. State 74. Argued December 1, 1971.—Decided January 6, 1972.*
(Also reported in 193 N. W. 2d 36.)

550

552

For the appellants there was a brief by *Greenberg, Karp, Heitzman & Edhlund,* attorneys, and *Sandra A. Edhlund* of counsel, all of Milwaukee, and oral argument by *Sandra A. Edhlund.*

For the respondent the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HANLEY, J. The following issues are presented on this appeal:

(1) Did the trial court err in refusing to accept appellants' affidavit of prejudice;

(2) Did the trial court abuse its discretion when it denied appellants' request for a continuance;

(3) Was it error to permit cross-examination of appellants in regard to the nature of their prior convictions;

(4) Was the admission of evidence concerning the firearms found in appellants' vehicle prejudicial error;

(5) Was it prejudicial error for the court to give additional instructions to the jury in the absense of defense counsel;

(6) Did the court erroneously imply to the jury that appellant had to convince the jury of his innocence; and

(7) Did the trial court abuse its discretion in imposing sentence?

*Refusal to honor affidavit of prejudice.*

Appellants were arraigned on October 16, 1969, before Judge SERAPHIM, pleaded not guilty and demanded a jury trial. November 3d was set as trial date. On that date, appellants appeared and attempted to move for a change of judge.

The affidavit of prejudice does not appear in the record on this appeal. The affidavit not being before us, we have no way of knowing whether it complied with statu-

tory requirements. As stated in *Long Investment Co. v. O'Donnell* (1958), 3 Wis. 2d 291, 300, 88 N. W. 2d 674:

"The filing of a properly worded affidavit [of prejudice] is a condition precedent to challenging on appeal the refusal of the trial judge to honor such affidavit. . . ."

Moreover, even if the affidavit were before this court, the trial court's refusal to honor it would not be error. Under sec. 956.03, Stats. 1967, an affidavit of prejudice must be filed in a misdemeanor case at the time of arraignment or at the time the defendant demands a jury trial. Here the jury demand was made October 16, 1969. The attempt to file the affidavit was not made until November 3, 1969. Since the affidavit was not timely presented, the trial court properly refused to honor it.

### *Motion for continuance.*

Appellants moved for a continuance when they appeared for trial on November 3, 1969. The motion was denied on the basis that it had not been filed before the case was called for trial. A motion for continuance is addressed to the sound discretion of the trial court, and this court will not disturb the exercise of that discretion unless clear abuse is shown. *Elam v. State* (1971), 50 Wis. 2d 383, 389, 390, 184 N. W. 2d 176. The motion in this case was based upon appellants' assertion that they had no notice of the trial date set until ten o'clock on the morning of November 3, 1969, and that they were therefore not prepared. In addition, the defense counsel who was more familiar with the case than the other members of the firm was not in the city at the time. Finally, several witnesses for the defense had not been subpoenaed and were not available on short notice.

The confusion concerning the trial date resulted from the transfer of the case from county court to circuit court and the subsequent designation of Judge SERAPHIM as

acting circuit judge for trial of the matter. The transcript of the hearing before Circuit Judge HUGH R. O'CONNELL shows the following exchange between the court and defense counsel:

"*The Court:* This matter was sent—transferred to the Circuit Court for trial by the County Court; is that correct?

"*Mr. Dannenberg:* I am frankly confused as to what the disposition in this case has been. We were under the impression in Judge SERAPHIM'S court that it was to be tried there. My partner, Mr. Karp, later checked with the Circuit Court and they indicated that it would be sent to this court.

"*The Court:* Well, there was a demand for a jury of twelve.

"*Mr. Dannenberg:* Yes, there was.

"*The Court:* And then the Court set the case for a jury trial to November 3rd. On a motion of the State, the Court transferred the case to the Circuit Court for trial.

"*Mr. Dannenberg:* I was not aware of the State's motion.

"*The Court:* This is another one of those cases where we are defeating the purposes of the statute which was recently enacted to cover the question of appeals and new trials.

"*Mr. Manian:* Sure, I don't understand the motion.

"*The Court:* I don't understand it either, but I know what I'm going to do about it. This case came from Branch 4. By the inherent power invested in me as a Circuit Court Judge, I am going to call upon Judge CHRIST T. SERAPHIM to act as a Circuit Court judge to hear this matter and administratively transfer this matter to him *for trial by jury, which he set the case down for.* So ordered. Then, if there is an appeal, it can be handled in the proper manner. The less we say about that the better." (Emphasis supplied.)

Defense counsel was obviously aware that the case had been transferred to Judge SERAPHIM, who was to serve as acting circuit judge. The emphasized words in the above quote should have apprised counsel that Judge O'CONNELL recognized and approved the trial date set by

Judge SERAPHIM. The fact that Judge SERAPHIM, who had set the trial date at time of arraignment, was appointed to try the case should have made defense counsel realize that the trial would be held on the date scheduled. If counsel did not so realize, it was his duty to check Judge SERAPHIM'S calendar to determine if another date had been set. His failure to do so amounts to a lack of due diligence, which is an appropriate reason to deny the motion.

Appellants' second ground for a continuance—that the chief counsel was not present—is also insufficient to merit a delay. The absence of one member of a firm of able lawyers representing the accused does not require a continuance where another is present in court. *Duenkel v. State* (1932), 207 Wis. 644, 645, 646, 242 N. W. 179, followed in 207 Wis. 651, 242 N. W. 182.

Nor could appellants have been prejudiced by the insufficiency of time in which to call witnesses to testify about the physical condition of appellants on the day after their arrest, since that testimony was ruled immaterial to the offense of resisting an officer. The trial court did not abuse its discretion in denying appellants' motion for a continuance.

*Questions concerning prior convictions.*

On cross-examination, the district attorney questioned appellant Leverette about his prior convictions. The following exchange took place:

"Q. Have you ever been convicted of a crime?
"A. Convicted?
"Q. Um-hmm.
"A. Nothing other than driving without a license and disorderly conduct.
"Q. How many times on the disorderly?
"A. I don't remember exactly.
"Q. It's more than once, though, isn't it?
"A. Twice.

"*Q.* Twice? Gambling and fighting—would those be the two occasions?

"*A.* Yes.

"*Q.* What years?

"*A.* I don't remember exactly the years.

"*Q.* '67? Would that refresh your memory?

"*A.* Maybe '67.

"*Q.* So you've had some trouble with the law before, haven't you?

"*A.* Yes."

Appellants claim that it was prejudicial error for the prosecutor to mention the nature of the crimes. This court has frequently stated that evidence relating to the nature of the prior crimes is generally inadmissible because of the prejudicial effect it might have on the jury. *Nicholas v. State* (1971), 49 Wis. 2d 683, 688, 183 N. W. 2d 11. However, a number of exceptions have sprung from that general rule. In *Nicholas, supra,* at page 689, this court stated:

". . . The party conducting the cross-examination may ask the witness only two questions, to wit: Has he ever been convicted of a crime; and, if so, how many times? If the witness' answers are truthful and accurate, then no further inquiry may be made. However, if the witness lies or claims he cannot remember, the cross-examiner is entitled to supply for the jury the information which the witness has denied or failed to recall. . . . However, if on direct, the answers are inaccurate or incomplete, then the correct and complete facts may be brought out on cross-examination. Generally, this is done by asking the defendant if he was convicted of a particular crime on a particular date; and if he still denies it, then his criminal record may be put in evidence in order to show that he, in fact, has been convicted.

"When asking the witness about prior crimes, it is permissible to mention the crime by name in order to insure that the witness understands which particular conviction is being referred to."

The transcript reveals that appellant himself volunteered the information that the nature of his prior crimes

was driving without a license and disorderly conduct. The district attorney went further, however, and specified that the disorderly conduct charges arose out of gambling and fighting. Error, if any, cannot be held to be prejudicial, especially in light of appellant's admission.

*Evidence concerning firearms.*

On direct examination, the district attorney asked Officer Lelinski if anything was found in the Volkswagen after the arrest. This question was objected to as irrelevant, and the objection was sustained. No testimony was elicited on direct examination as to whether the officers were armed at the time of the arrest. Officer Lelinski testified on cross-examination, however, that he approached appellants with his gun drawn and that Lieutenant Beste stood a short distance away, holding a shotgun. On redirect examination, the prosecutor asked the following questions:

"*Q.* There has been some testimony here on cross-examination about a shotgun, correct?
"*A.* Yes, sir.
"*The Court:* That the lieutenant was holding a shotgun.
"*Mr. Genrich:*
"*Q.* The lieutenant had a shotgun; is that correct?
"*A.* Yes, sir.
"*Q.* And you were also armed, were you not?
"*A.* Yes, sir.
"*Q.* Was anyone else armed?
"*A.* Yes, sir.
"*Q.* Who?
"*A.* There was weapons in the automobile."

Defense counsel then objected and argues on this appeal that any evidence relating to firearms in the car was irrelevant and prejudicial.

We think that the evidence was properly admitted for the reason stated by the trial court in his ruling on the objection:

*"The Court:* Well, as you know, Mr. Grace, I did sustain the objections, or in fact I was very careful not to let this into the record during direct examination. You have built up a climate or an atmosphere, however, that only the officers were in a position of doing harm with arms to the defendants. I think then the question is a proper one by the prosecution as to whether the defendants had arms also, and the objection is overruled."

*Additional instructions to jury.*

After the jury had retired for deliberations, the foreman returned to ask whether the arresting officers had used a red light on their squad car while they were following the Volkswagen. Appellants and their counsel were not present in court at the time. The record reveals that the following exchange took place:

*"The Court:* One moment. If you recall, there is a stipulation that the stopping and the arrest was with probable cause. So actually this is not a material fact.

*"The Foreman:* Well, it was a question in one of the juror's mind about when the red light was flashed.

*"The Court:* It doesn't make any difference because there is a stipulation here that it was a lawful—

*"The Foreman:* He mentioned that, too, but we just wanted to clear that up.

*"The Court:* Don't say any more than that, sir. All I am saying is that the issue is not whether the arrest was proper.

*"The Foreman:* I understand that.

*"The Court:* The only question is, as I instructed you as to whether there was resisting, and that's as far as I wish to go.

*"The Foreman:* Okay.

*"The Court:* Now you will go back and deliberate on those terms.

*"The Foreman:* Very well."

Clearly, counsel has a right, and a duty, to be present when additional instructions are requested by the jury. *State v. Russell* (1958), 5 Wis. 2d 196, 200, 92 N. W. 2d 210. However, this right may be waived by the absence

of counsel from the courtroom during the regular session of the court. *State v. Ritchie* (1970), 46 Wis. 2d 47, 54, 174 N. W. 2d 504. As stated in *State v. Russell, supra,* at page 200:

". . . If counsel is absent the judge may presume it is voluntarily and a waiver unless he knows to the contrary or personally has taken the responsibility to see that counsel is notified or there are court rules governing the situation. Responsibility cannot be placed upon the court by counsel to be called or searched out when he knows the court is in session."

Moreover, appellants fail to show how the communication between the judge and the jury resulted in prejudice to them. In *Seitz v. Seitz* (1967), 35 Wis. 2d 282, 306, 151 N. W. 2d 86, this court reviewed the contention that appellants were entitled to a new trial because of a brief communication between a bailiff and one of the jurors. This court stated at page 306:

". . . [I]t is difficult to perceive how this innocuous occurrence could in any manner have resulted in prejudice to plaintiff. Since *Wegner v. Chicago & N. W. R. Co.* [(1952), 262 Wis. 402, 55 N. W. 2d 420, 41 A. L. R. 2d 279], this court has stood by the rule that a communication with the jury is not sufficient to warrant a new trial in the absence of prejudice. . . ."

### *Alleged inference of guilt.*

Appellants contend that a statement made by the trial court to appellant White while the latter was being questioned resulted in an implication that he had to convince the jury of his innocence, rather than being afforded the presumption of innocence. The occurrence is set forth on page 163 of the record:

*"Mr. Genrich:* I am having a little trouble, Your Honor, understanding the witness. I wonder if he could get closer to the microphone.

*"The Court:* Well, he isn't speaking up. Mr. White, you are going to have to convince the jurors here and you are not going to convince them very well unless they can hear you.

*"A.* After we got out of the car, —

*"The Court:* That's better. All right."

It is obvious from the above that the court was merely telling the appellant that he would have to speak louder. No inference of guilt can be drawn from the statement of the judge. Furthermore, the jury was properly instructed on the presumption of innocence before they retired.

*Abuse of discretion in sentencing.*

The final contention of appellants is that the trial court abused its discretion by using improper standards in setting the sentences. The trial judge did not state for the record anything relating to the past record of the appellants, their respective characters or the nature of the crime. The only statements made by the judge relative to sentencing are as follows:

*"The Court:* What is this National Organizing Committee?

*"Defendant Collins:* It's a white revolutionary organization, just like other black revolutionary organizations, and brown revolutionary organizations. We have an alliance with one another.

*"The Court:* You are a revolutionist?

*"Defendant Collins:* Right.

*"The Court:* (Addressing Defendant Leverette) Are you also a revolutionist, sir?

*"Defendant Leverette:* Right.

*"The Court:* (Addressing Defendant White) And you, too?

*"Defendant White:* Yes, I am.

*"The Court:* Well, certainly I do not approve of revolutionaries with guns. So let the message go out to the

revolutionaries of this community. One year in the House of Correction as to each defendant."

From the above quote we cannot conclude that the trial judge was imposing the maximum sentence of one year because of the appellants' political beliefs. The trial court emphasized revolutionaries with guns.

In *McCleary v. State* (1971), 49 Wis. 2d 263, 182 N. W. 2d 512, this court stated, at page 282, that "it is . . . our duty to affirm the sentence on appeal if from the facts of record it is sustainable as a proper discretionary act." A review of relevant facts is in order. Both appellants Leverette and Collins had previously been convicted of disorderly conduct; nothing appears of record as to any prior record of appellant White. The crime involved violence and jeopardized the safety of a police officer. This was not mere passive resistance, but the use of force. These facts alone would justify the imposition of a one-year term. We conclude the trial judge did not abuse his discretion in imposing sentence.

*By the Court.*—Ordered affirmed.