Charles MAY, Plaintiff in error-Petitioner,

v.

STATE of Wisconsin, Defendant in error.

Supreme Court

*No. 77–853–CR. Argued June 4, 1980.—Decided June 27, 1980.*

(Also reported in 293 N.W.2d 478.)

176

For the plaintiff in error-petitioner there was a brief and oral argument by *Jack E. Schairer,* assistant state public defender.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

CONNOR T. HANSEN, J.   The issues presented on this review concern the procedure used by the trial court in responding to an inquiry from the jury during the course of its deliberations and the instructions given to the jury.

At the time of the incident which is the basis of the instant prosecution Charles May, the petitioner (hereinafter defendant), and Cheryl Olson were living together in an apartment in Madison, Wisconsin. Both had prior criminal records, each was receiving some public assistance, and May was on parole.

Leon Dandurand, a Madison police officer who worked as an undercover narcotics agent, testified that on May 4, 1977, he went to the apartment occupied by the defendant and Olson to purchase "speed," an amphetamine. He was accompanied by an informant who was an acquaintance of the defendant and who introduced him to the defendant. Dandurand told the defendant he wanted to look at whatever he had. The defendant went to the kitchen cupboard, took out a plastic container and showed Dandurand a quantity of capsules which he said were "speed." The defendant said they were $2 apiece and asked Dandurand how many he wanted. Dandurand said five and gave the defendant $10 for them. He asked whether the capsules were of good quality, and the defendant said that they were "okay," but that in a couple of days he would have a quantity of "black cadillacs," which are a stronger form of "speed." Dandurand asked

if he could stop by in a couple of days. The defendant indicated that he could and that if he had the "black cadillacs," they could make a deal. Olson was in the living room watching TV while this transaction occurred.

Two days later, on May 6th, Dandurand went to the apartment at about 7 p.m. He was admitted to the apartment by Olson and he asked her if the "black cadillacs" which he had discussed with the defendant had arrived. She indicated that she knew nothing about them and that he should contact the defendant who would probably be back within an hour.

Dandurand left and returned to his office. At approximately 8:10 p.m. he telephoned the apartment. Olson answered the phone and Dandurand asked if the defendant was there. When the defendant came to the phone, Dandurand asked him if he had the "black cadillacs," and the defendant said he did, but that he only had ten of them. The defendant said that the price was $3.50 apiece and that Dandurand could come over and get them.

Dandurand arrived at the apartment at 8:24 p.m. Olson let him in and he said he was the person interested in the "black cadillacs." She went to the kitchen cupboard and got a plastic container in which there were capsules of various colors. The defendant at this time was in the living room talking to a man. Olson showed the capsules to Dandurand and he said he was only interested in the "black cadillacs" and wanted ten of them. She took the black capsules from the container, wrapped them in plastic wrap and gave them to Dandurand, who gave her $35. They discussed the possibility of future drug deals and Dandurand left.

The black capsules were subsequently examined by a chemist and were found to contain amphetamine.

As a result of the transaction on May 6, 1977, both the defendant and Olson were charged with being par-

ties to the crime of delivering a controlled substance. Olson pleaded guilty to the charge. She testified that she and the defendant had a close relationship and lived together intermittently for about one and a half years. She sold "speed" and other controlled substances and the defendant assisted her in so doing by directing people to her. On May 4, 1977, just prior to the first transaction with Dandurand, Olson told the defendant that he should attempt to sell what she believed to be cold capsules as "something else" because she needed the money. She was present in the apartment during the transaction with Dandurand and the proceeds of the sale were given to her by the defendant. The defendant told her that Dandurand was interested in different types of "speed" and wanted "cadillacs." She told the defendant that she would try to obtain some in the next couple of days and did so on May 5th. After the defendant completed his telephone conversation with Dandurand on May 6, 1977, for the second transaction, the defendant told her that he suspected a police "set-up" and wanted nothing to do with Dandurand when he came over and advised her to do the same. Her financial needs were such, however, that she was not concerned about the possibility of her criminal involvement.

The defendant testified that he would from time to time facilitate transactions between Olson and persons who were interested in buying "speed." He was a seller of marijuana and his customers would ask him if he knew where they could get "speed"; he would tell Olson he had a customer for her and would sell her "speed" to his customers on her behalf. Immediately after the May 6th telephone conversation with Dandurand, the defendant changed his mind about delivering the amphetamine to Dandurand. He told Olson that she should abandon the sale because he believed the caller was a police officer. The defendant said he was not going to

have anything to do with the delivery. He was present when Dandurand arrived, but did not attempt to involve himself in the delivery and received nothing from the transaction. Olson also so testified.

Additional facts will be set forth when considering the issues presented on this review, which are:

1. Did the trial court err in answering the question posed by the jury in the absence of counsel?

2. Did the trial court err in answering the question in the absence of the defendant?

3. Can a person withdraw from aiding and abetting in the commission of a crime?

4. Was the defendant denied his right to a unanimous verdict?

After the jury retired to deliberate, the trial court told counsel to notify the clerk of their whereabouts so that they could be reached in the event they were needed. Both counsel so notified the clerk and left the courtroom. The jury sent a note to the court after it began its deliberations which read:

"By withdrawing from a conspiracy has a person removed themselves [sic] from aiding and abetting the commission of a crime?"

The trial judge directed the clerk to answer the question, "No." Neither the defendant nor his attorney was present. At the time they had no knowledge that the inquiry had been made or that the court had responded. It is the foregoing incident which produces the principal issues on this review.

The jury subsequently sent two more written questions to the trial court:

"Your Honor, do actions taken by the principals in the actions leading up a crime where there is also a person aiding and abetting the principal constitute aiding and abetting in the actual commission of the crime where, a., the principal withdraws from the plans ahead of

time, b., the person aiding and abetting takes over as principal, and, c., the former principal has no further part in the crime and desires that the principal not commit the crime?

"Can a principal in a crime also aid and abet in that crime?"

The court sent a note to the jury asking whether it would be of assistance if the court reread the instructions. The jury responded in the affirmative. At this point counsel for the state and for the defendant were both present in the courtroom. The court proposed to ask the jury whether they wanted the entire instructions read or just the instructions regarding party to a crime, and stated that, in any event, he would read the instructions on party to a crime. Both counsel stated that they had no objection. Also at this time the trial court informed counsel of the first question by the jury and the response of the court. Defense counsel objected to the court's having responded to the jury without prior notification of counsel and to the substance of the court's response. He stated that the court either should not have answered the question or should have framed a particular instruction explaining the possible consequences of withdrawal. The judge responded that he believed his answer was a correct statement of the law. The jury was recalled and a colloquy followed between the court and the jury in the presence of counsel, as a result of which the court reread to the jury the instructions on party to a crime.

## ERROR TO RESPOND TO JURY INQUIRY IN ABSENCE OF COUNSEL.

The defendant contends that the trial court committed reversible error in answering, in the absence of counsel, the first question posed by the deliberating jury. The court of appeals held that it was error for the trial court to respond to the jury's question in the absence of de-

fense counsel, but that the error was harmless since the trial court correctly answered the question.

In *State v. Stewart,* 56 Wis.2d 278, 201 N.W.2d 754 (1972), the jury, while deliberating, wrote out a question and sent it to the trial judge. Neither the defendant nor his counsel was present in court at the time. Without notifying counsel or the defendant, the judge responded to the question by writing a short note to the jury. As here, it was claimed that reversible error occurred because of the exchange of a written communication between the judge and the jury in the absence of the defendant and his counsel. The court, without deciding whether there was waiver, rejected the claim of error and stated the rules regarding communications between the judge and jury in the absence of counsel as follows:

"... Our rule provides that counsel has a right and a duty to be present when additional instructions are requested by the jury. *State v. Russell* (1958), 5 Wis.2d 196, 92 N.W.2d 210. However, this right may be waived by the absence of counsel from the courtroom during the regular session of the court. *State v. Ritchie* (1970), 46 Wis.2d 47, 174 N.W.2d 504, and *State v. White* (1972), 53 Wis.2d 549, 193 N.W.2d 36. When defense counsel is absent from the courtroom the judge can presume it was voluntary and a waiver on his part unless the judge has been informed to the contrary or the judge has personally taken the responsibility to see that counsel is notified. This responsibility cannot be cast upon the court by counsel to be called or to be searched out when counsel knows the court is in session. *State v. Ritchie, supra.* Counsel must assume the risk as to his own arrangements with the court in being notified when the jury seeks additional instructions during deliberations. *State v. Russell, supra.* Further, even if there was no waiver and the defense counsel was present in court, this court has held that a communication with the jury would still not be sufficient to warrant a new trial or reversal in the absence of prejudice—that is, the com-

munication to the jury by the judge must constitute prejudicial error. *Wegner v. Chicago & N. W. Ry. Co.* (1952), 262 Wis. 402, 55 N.W.2d 420; *State v. Sawyer* (1953), 263 Wis. 218, 56 N.W.2d 811; *Seitz v. Seitz* (1967), 35 Wis.2d 282, 151 N.W.2d 86; and *State v. White, supra.*" *Id.* at 284, 285.

There was no waiver of counsel's right to be present when the jury made its inquiry in the instant case. Before he left the courtroom the defense counsel informed the trial court where he would be while the jury was deliberating. The record reflects that the trial court voluntarily undertook the responsibility of notifying counsel but admittedly did not do so. Upon returning to court and being informed of the communications between the judge and jury in his absence, defense counsel entered an objection. He emphasized the fact that he had notified the court of his whereabouts so he could be reached if he were needed. The trial court advised counsel that they were not notified as to the first inquiry from the jury because he was of the opinion that "no consultation or presence was necessary."

This case must be distinguished from *State v. Russell*, 5 Wis.2d 196, 92 N.W.2d 210 (1958), where it was held that no reversible error occurred when the trial court reinstructed the jury in the absence of defense counsel. There the defense counsel informed the trial court that he wished to be present when the jury came in and stated that he would be in his office and could be reached by phone. However, the trial judge did not receive his request or understood the request to mean that counsel wished to be present when the jury came in with a verdict.

Since there was no waiver in this case, counsel should have been given the opportunity to confer with the court about the appropriate response to be given to the jury's

question. It was error for the trial court to answer the question without notifying counsel. However, the communication between the judge and jury did not result in prejudice to the defendant because the judge correctly answered the jury's question "No."

The jury in essence asked the trial court whether any person who withdraws from a conspiracy thereby also withdraws from aiding and abetting. Under the provisions of sec. 939.05, Stats.,[1] a person is a party to a crime 1) if he directly commits the crime, or 2) if he intentionally aids and abets its commission, or 3) if he is a party to a conspiracy with another to commit it. Conspiracy and aiding and abetting are alternative ways in which a person may be a party to a crime. A conspiracy requires (1) an agreement between two or more persons to direct their conduct toward the realization of a criminal objective and (2) each member of the conspiracy individually consciously intends the realiza-

---

[1] "939.05 **Parties to crime.** (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; or

"(c) Is a party to a conspiracy with another to commit; it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw."

tion of the particular criminal objective. *Bergeron v. State,* 85 Wis.2d 595, 606, 271 N.W.2d 386 (1978) ; *State v. Nutley,* 24 Wis.2d 527, 556, 129 N.W.2d 155 (1964), cert. denied 380 U.S. 918 (1965). Aiding and abetting requires that a person (1) undertake conduct (either verbal or overt action) which as a matter of objective fact aids another person in the execution of a crime and (2) he consciously desires or intends that his conduct will yield such assistance. *Frankovis v. State,* 94 Wis.2d 141, 149, 287 N.W.2d 791 (1980) ; *Krueger v. State,* 84 Wis.2d 272, 285, 267 N.W.2d 602 (1978), cert. denied 439 U.S. 874 (1978) ; *State v. Asfoor,* 75 Wis.2d 411, 427, 249 N.W.2d 529 (1977). If a person is not a party to a crime as a conspirator, either because he never conspired or because prior to its commission he withdrew from the conspiracy, as provided by sec. 939.05(2) (c), he still is a party to the crime if he either directly commits it or if he intentionally aids and abets in its commission.

Viewed in the context of this case, the trial judge correctly told the jury that a person who withdraws from a conspiracy does not remove himself from aiding and abetting. Therefore, the communication between the judge and jury did not constitute prejudice to the defendant and the error was harmless by any standard.

## ABSENCE OF DEFENDANT.

The defendant was not present at the time the trial court received and responded "No" to the first question posed by the jury. The court of appeals held that his absence did not result in the denial of his right to due process or a violation of sec. 971.04, Stats. The defendant contends that the court of appeals' holding was incorrect, but gives no reason why this court should conclude that his presence was necessary.

An accused has the right under art. I, sec. 7 of the Wisconsin Constitution and the sixth and fourteenth amendments of the United States Constitution to be present during his trial. *Leroux v. State,* 58 Wis.2d 671, 689, 207 N.W.2d 589 (1973) ; *Beverly v. State,* 47 Wis.2d 725, 729, 177 N.W.2d 870 (1970), cert. denied 400 U.S. 995 (1971) ; *Williams v. State,* 40 Wis.2d 154, 161, 161 N.W.2d 218 (1968). However, the presence of the defendant is required as a constitutional condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only. *Snyder v. Massachusetts,* 291 U.S. 97, 107, 108 (1934) ; *Leroux v. State, supra,* at 690; *Gelhaar v. State,* 58 Wis. 2d 547, 560, 207 N.W.2d 88 (1973) ; *State v. Clarke,* 49 Wis.2d 161, 175, 181 N.W.2d 355 (1970) ; *Ramer v. State,* 40 Wis.2d 79, 85, 161 N.W.2d 209 (1968), cert. denied 394 U.S. 989 (1969). This court has also held that when a conference in chambers deals solely with a question of law or procedure, the defendant's absence does not constitute a denial of due process. *State v. Clarke, supra,* at 175; *Ramer v. State, supra,* at 85.

In the instant case there was no "hearing" or need for a hearing before the trial court answered the jury's written question concerning the effect of withdrawal from a conspiracy by communicating a one-word answer to the jury. A fair and just trial was not thwarted by the court's answering that question outside the defendant's presence. The question posed by the jury dealt with a question of law and the trial court answered it correctly. Nothing transpired which was prejudicial or harmful to the defendant's cause, especially in view of the fact that the trial court subsequently reread to the jury the instructions concerning party to a crime.

Furthermore, the procedure adopted by the trial court did not contravene any of the provisions of sec. 971.04,

Stats.[2] This section does not require the defendant to be present before the trial court can respond to every question posed by a deliberating jury. The Criminal Rules Committee comment to sec. 971.04, states:

". . . This is designed to clarify rules for attendance of defendant at various stages in criminal proceedings. The section recognizes that at certain hearings, such as arguments on matters of law and calendaring, a defendant need not be present."

[2] "971.04 **Defendant to be present.** (1) Except as provided in subs. (2) and (3), the defendant shall be present:

"(a) At the arraignment;

"(b) At trial;

"(c) At all proceedings when the jury is being selected;

"(d) At any evidentiary hearing;

"(e) At any view by the jury;

"(f) When the jury returns its verdict;

"(g) At the pronouncement of judgment and the imposition of sentence;

"(h) At any other proceeding when ordered by the court.

"(2) A defendant charged with a misdemeanor may authorize his attorney in writing to act on his behalf in any manner, with leave of the court, and be excused from attendance at any or all proceedings.

"(3) If the defendant is present at the beginning of the trial and shall thereafter, during the progress of the trial or before the verdict of the jury has been returned into court, voluntarily absent himself from the presence of the court without leave of the court, the trial or return of verdict of the jury in the case shall not thereby be postponed or delayed, but the trial or submission of said case to the jury for verdict and the return of verdict thereon, if required, shall proceed in all respects as though the defendant were present in court at all times. A defendant need not be present at the pronouncement or entry of an order granting or denying relief under s. 974.02 or 974.06. If he is not present, the time for appeal from any order under ss. 974.02 and 974.06 shall commence after either a copy has been served upon him or upon his attorney, if any. Service on the defendant may be made in the manner provided for service in civil actions or by mailing a copy to the defendant's last-known address or under s. 53.02(5), if applicable."

The communication between the judge and jury related to a question of law, and therefore the defendant's absence at the time of the communication did not result in a non-compliance with the provisions of sec. 971.04.

## EFFECT OF WITHDRAWAL FROM CONSPIRACY ON AIDING AND ABETTING.

The court of appeals held that the trial court correctly instructed the jury that a person who withdraws from a conspiracy does not remove himself from aiding and abetting. Unfortunately the court of appeals then proceeded to hold that an aider and abettor cannot withdraw from a completed act of assistance. *May v. State, supra,* at 549, 550. That was not the question asked by the jury or answered by the trial court and is not an issue in this case.

The question asked by the jury was not whether an aider and abettor can withdraw his assistance. It was

"By withdrawing from a conspiracy has a person removed themselves [sic] from aiding and abetting the commission of a crime?"

The trial court answered "No" to this question and the court of appeals found that "No" was a correct answer. It clearly is a correct answer under the provisions of sec. 939.05, Stats.

The issue before the court of appeals was whether the trial court correctly answered the jury's inquiry concerning the effect of withdrawal from a conspiracy on aiding and abetting. In order for the court of appeals to decide this issue it was not necessary for it to decide whether it is possible for an aider and abettor to withdraw his aid and avoid criminal liability. The question posed by the jury did not require such a decision. In effect the court answered a question not asked by the jury and not answered by the trial court.

Since the court of appeals decided an issue which was not before it, this court does not here determine whether the court of appeals was correct in concluding that an aider and abettor cannot withdraw his assistance.

## UNANIMOUS VERDICT.

The defendant contends that he was denied his constitutional right to a unanimous verdict because the jury instructions did not require the jury to specify which party-to-a-crime theory was the basis for its finding of guilt.

The trial court instructed the jury, in accordance with Wisconsin Jury Instruction—Criminal 400, that a person who is concerned in the commission of a crime may be convicted of the crime although he did not directly commit it, and that a person is concerned in the commission of a crime if he intentionally aids and abets its commission or conspires with another to commit the crime. The court gave the standard unanimity instruction but did not instruct the jury that it must be unanimous as to the manner in which the defendant was a party to the crime. Thereafter the jury returned its verdict finding the defendant "guilty of being a party to the crime of delivering a controlled substance; to wit: amphetamine, contrary to Section 161.41(1)(b), and 939.05 of the Statutes as charged in the Information."

Although the holdings of this court have consistently been to the contrary, the public defender persists in raising this issue. Here the jury unanimously found participation in the commission of the substantive crime when it returned a unanimous verdict. There is no requirement, constitutional or otherwise, that requires unanimity with respect to the alternative ways or means in which a crime can be committed. This question is entirely distinct from proving the elements of the substantive crime.

In *State v. Charbarneau,* 82 Wis.2d 644, 264 N.W.2d 227 (1978), and even more recently in *Holland v. State,* 91 Wis.2d 134, 280 N.W.2d 288 (1979), this issue was before this court. The issue in *Holland* was whether the unanimity principle is violated where the trial court instructs the jury, in the disjunctive, as to the various ways a person might be guilty as a party to a crime without requiring the jurors to agree on the applicable theory or theories. This court stated:

"Unanimity is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged, and unanimity is not required with respect to the alternative means or ways in which the crime can be committed . . . To permit any other conclusion would be to permit the guilty defendant to escape accountability under the law because jurors could not unanimously choose beyond a reasonable doubt which of several alternate ways the defendant actually participated, even though all agree that he was, in fact, a participant.

" . . . .

"Here we have a single offense for which the defendant could be found liable in three alternative ways—direct commission, aiding and abetting, and conspiracy—when the jury unanimously concluded the defendant was guilty of second-degree murder. The jury unanimously found participation, and it was not necessary that it be agreed as to the theory of participation. To require unanimity as to the manner of participation would be to frustrate the justice system, promote endless jury deliberations, encourage hung juries, and precipitate retrials in an effort to find agreement on a nonessential issue." *Id.* at 143, 144.

In *Harrison v. State,* 78 Wis.2d 189, 254 N.W.2d 220 (1977), the defendant was charged with endangering the safety of another by conduct regardless of life contrary to sec. 941.30, Stats., and attempted first-degree murder contrary to secs. 939.32 and 940.01. The jury returned a verdict of guilty to each of these counts, and

by that verdict the defendant was found guilty as a principal on each count. A party to the crime instruction under sec. 939.05 was submitted to the jury. The defendant alleged that sec. 939.05 was unconstitutional as applied to the case. Specifically,

". . . the Public Defender argued that the party to the crime statute posed alternate theories for the jury's deliberation. Under such instruction the jury could find that Harrison was concerned in the commission of the crime as a principal, if he directly committed the crime, intentionally aided and abetted the commission of the crime, or was a party to a conspiracy for the purpose of committing a crime. It appears to be the argument of the Public Defender that these alternate theories of responsibility fail to give notice to the defendant of the jury's rationale in arriving at the verdict of guilty. The emphasis of the Public Defender seems to be upon the fact that, because the verdict, in conformity with the information and with sec. 939.05, found him guilty as a principal, he is unable to attack his conviction, because he cannot ascertain which of the three alternatives were selected by the jury." *Id.* at 207, 208.

This court held that the party to the crime instruction was appropriate in this case and stated:

"In *State v. Shears*, 68 Wis.2d 217, 229 N.W.2d 103 (1975), we pointed out that the purpose behind the enactment of sec. 939.05, Stats., was to abolish the common law distinctions between principals and accessories to a crime. We specifically held, in relying on *Cydzik, supra*, that the instructions to the jury, which not only instructed on the principal crime but on aiding and abetting and conspiracy, did not unconstitutionally deny a defendant of notice.

"The instructions under sec. 939.05, Stats., were not unconstitutionally applied in the instant case. *It is entirely correct, in accordance with the rationale of sec. 939.05, that the verdict of the jury refer only to the substantive offense, even when a party to a crime instruction has been given and when the jury has made the finding of guilt on an alternate basis of vicarious*

*liability."* (Emphasis supplied.) *Harrison v. State, supra,* at 210.

In the instant case the defendant was charged with being a party to the crime of delivering a controlled substance. The manner in which he participated in this offense—either directly or by aiding and abetting in the delivery of a controlled substance or by conspiring with another to deliver a controlled substance—was not an element of the offense. The jury did not have to unanimously agree on the manner in which he participated. They unanimously agreed that he participated in the commission of the offense, which is all that was required. Therefore, the trial court did not err in failing to instruct the jury that they must be unanimous in regard to the manner in which the defendant participated in the crime of delivering a controlled substance. There was no need for the verdict to specify the particular party to the crime theory on which the jury relied.

The defendant argues before this court that the court of appeals misapplied *Holland v. State, supra.* He contends that the problem in this case is not a difference among the jurors concerning the manner in which the defendant was liable as a party to the crime. Rather, the jury, as indicated by their questions to the trial court, was divided between withdrawal from a conspiracy and aiding and abetting, and thus, the jury was split between guilt or innocence. This argument has no merit. The jury returned a unanimous verdict finding the defendant guilty of being a party to the crime of delivering a controlled substance. If the twelve jurors would have been divided on the question of guilt or innocence a unanimous verdict of guilty could not have been returned.

*By the Court.*—Decision of the court of appeals is affirmed.