STATE of Wisconsin, Plaintiff-Respondent,

v.

Billy CLIFTON, Defendant-Appellant. †

Court of Appeals

*No. 88-1480-CR. Submitted on briefs March 8, 1989.—Decided May 4, 1989.*

(Also reported in 443 N.W.2d 26.)

†Petition to review denied.

676

For the defendant-appellant the cause was submitted on the briefs of *Elizabeth E. Stephens,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *James M. Freimuth,* assistant attorney general.

Before Moser, P.J., Sullivan and Fine, JJ.

SULLIVAN, J.   Billy Clifton (Clifton) appeals from a judgment convicting him of robbery, contrary to sec. 943.32(1)(b), Stats.

On appeal, Clifton argues that:

> (1)   his rights guaranteed by the sixth and fourteenth amendments to the United States Constitution and the implicit presumption of innocence were violated when he was compelled to appear before the jury in jail clothing; when the court deployed a deputy sheriff between him and his counsel during trial; and when he was observed by jurors while in shackles;
>
> (2)   his rights to due process and counsel, guaranteed by the sixth and fourteenth amendments to the United States Constitution, art. I, sec. 7 of the Wisconsin Constitution, and sec. 970.02(1)(b), Stats. were violated when the trial court denied his motion to substitute his counsel after a complete breakdown in their relationship occurred;
>
> (3)   his right to be present at his trial, guaranteed by the sixth and fourteenth amendments to the United States Constitution and art. I, sec. 7 of the Wisconsin constitution, was violated by his exclusion from in-chambers conferences concerning courtroom security; and
>
> (4)   the trial court abused its discretion in admitting irrelevant and prejudicial evidence.

Because Clifton's arguments are meritless, we affirm.

The criminal complaint alleged that Clifton robbed Richard Cassel (Cassel), a part-time, semi-retired automobile salesman. Cassel had placed an advertisement in the newspaper for the sale of a 1978 Fleetwood Cadillac. A man who identified himself as Clifton responded to the ad. The two men arranged for a meeting near Clifton's home. On April 5, 1986, Clifton test drove the automobile and then instructed Cassel to park the car in

an alley where they agreed on the price of $5,500. Cassel prepared a bill of sale. After this transaction was completed, but before any money was exchanged, Clifton told Cassel "I'm robbing you." Clifton took the Cadillac, between $40 to $50 of Cassel's money, Cassel's motor vehicle operator's license, business cards, and identification. Clifton forced Cassel, under the threat of death, to draw an Ozaukee Auto Sales, Inc. check for $500 to Essie Mae Newsom. Cassel was allowed to leave but Clifton allegedly threatened to burn his house down if he called the police. Cassel promptly telephoned the police from a service station. The police arrested Clifton the same day, after Cassel identified him from a photographic array.

## PRISON CLOTHING; DEPLOYMENT OF SECURITY; SHACKLES

The right to a fair trial is guaranteed by the sixth and fourteenth amendments to the United States Constitution. *Holbrook v. Flynn,* 475 U.S. 560, 567 (1986). "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams,* 425 U.S. 501, 503 (1976). The United States Supreme Court in *Estelle* held that a state violates a defendant's right to due process, and therefore the presumption of innocence, when it requires him to appear at trial in *identifiable* prison clothing. *Id.* at 512. We conclude that the trial court in this case did not abuse its discretion in denying Clifton's various motions relating to jail clothing because the record supports the finding that the clothing worn by Clifton could not be identified as jail clothing.

On the second day of trial, Clifton wore a green shirt covering a white undershirt, green pants and white tennis shoes. Outside the jury's presence, Clifton moved for a mistrial because of his "county clothes." The trial court promptly corrected the situation by removing Clifton's orange jacket stamped "Milwaukee County Jail." As noted on the record by the assistant district attorney, the remaining clothing contained no writing or indicia of jail garb. An undershirt marked "Milwaukee County HOC" was covered when the outer shirt was buttoned. Clifton's motion for mistrial invoked the discretion of the trial court. *See State v. Grady,* 93 Wis. 2d 1, 13, 286 N.W.2d 607, 612 (Ct. App. 1979). Because the clothing was not identifiable as jail issue, the trial court did not abuse its discretion when it denied the defendant's motion.

During a recess, Clifton moved to dismiss the case because an orange jacket containing the words "County Jail" was in the courtroom. Clifton invoked the trial court's discretion on this procedural motion. *See In re D.S.,* 142 Wis. 2d 129, 133–34, 416 N.W.2d 292, 294 (1987). The trial court did not abuse its discretion because the jacket was at all times outside the jury's view and because the court immediately directed its removal to an anteroom.

At the beginning of the third day of trial, the assistant district attorney noted that Clifton appeared in a shirt marked "House of Correction" in two places. The District Attorney's office obtained a brown civilian pullover shirt that obliterated the offensive writing. Also, the trial court stated that it called the House of Correction and secured an agreement to clothe Clifton in his

inventoried street clothes. Clifton's street clothes were brought to him and the court later noted on the record that Clifton was attired in street clothes. The clothing worn by Clifton throughout the trial was not identifiable to the jury as prison clothing and therefore the defendant's constitutional rights were not violated.[1]

Clifton also asserts that the presumption of innocence was compromised when the trial court placed a deputy between him and his counsel. Further, he asserts that he was provided no opportunity to rebut statements that he intended to disrupt the trial, and that placement of the officer hampered his communication with counsel. The trial court requested an extra deputy, in addition to the two regularly assigned to the court, after Clifton's counsel, in-chambers and outside the jury's and Clifton's presence, advised the court that Clifton said he would punch counsel out and disrupt the trial before the jury.

The following morning, again outside the jury's and Clifton's presence, the trial court was informed by a House of Correction sergeant that Clifton intended to disrupt the trial. Clifton's counsel suggested that he be shackled to a chair. The trial court rejected the shackling proposal but reserved it for reconsideration if Clifton acted out at the trial. Instead of shackles, the court placed the third deputy behind the defendant. (Although there is no clear indication on the record, the defendant alleges that the other deputies were seated on either side

---

[1] Khaki clothing, issued by the Bureau of Prisons, containing a laundry number on the seat of the defendant's pants was not identifiable as prison garb during a jury trial. *United States v. Forrest*, 623 F.2d 1107, 1116 (5th Cir. 1980). *See also United States v. Dawson*, 563 F.2d 149, 152 (5th Cir. 1977) ("[i]t is the extent to which the defendant's clothing is communicative of his status as a prisoner (and inferentially a criminal) which determines whether or not he was denied a fair trial").

of him.) The trial court then informed Clifton, outside the jury's presence, that this action was taken to secure the courtroom. The court ordered removal of Clifton's handcuffs after Clifton told the court that he understood the court's statement. Clifton moved for a mistrial because of the presence of the three deputies. The trial court denied the motion.

Deployment of courtroom security is not an inherently prejudicial matter because a jury may infer nothing from the presence of officers, or it may conclude that they are present to prevent outside disruptive elements. *Holbrook,* 475 U.S. at 568-69. The Wisconsin Supreme Court requires exercise of trial court discretion and a statement of its reasons for restraint of a defendant. *Flowers v. State,* 43 Wis. 2d 352, 363, 168 N.W.2d 843, 849 (1969).

The briefs contain no case law relating to courtroom security. Clifton's counsel first brought the matter to the court's attention. We conclude that when reports of a defendant's threats are the basis for increased security, the defendant should be afforded an opportunity to explain or rebut the reports. The trial court, in substance, did this. It told Clifton that reports of his intended disturbances had been received, and it asked Clifton if he understood. Clifton replied that he did. He did not deny the reports. Under these circumstances, Clifton did not suffer violation of his due process right to be heard on the security issue.

Turning to the question of prejudice to Clifton by placement of the deputies, the trial court has discretion in the matter which requires it to balance the rights of the accused and of the public. *See State v. Cassal,* 48

Wis. 2d 619, 624, 180 N.W.2d 607, 611 (1970). Factors relating to this balance of interest are set forth in ABA Standards for Criminal Justice, 15-3.1 (2d ed. 1980).

The trial court, aware of the factual setting of Clifton's robbery charge, of Clifton's alleged threats, of his dissatisfaction of counsel, and that he faced other criminal charges, did not abuse its discretion in providing another deputy for courtroom security purposes. Clifton's complaint that placement of an officer between him and counsel trammeled his access to counsel is without basis in the record. In fact, Clifton and counsel conferred during breaks in the testimony.

Finally, Clifton complains that, after the first day of trial, a juror purchasing bubble gum from a machine saw him in handcuffs outside the courtroom on his way to jail. This issue is addressed in *Cassal*, which determined that a juror's observation of a restrained defendant outside a courtroom was not likely to arouse a juror's prejudice because people expect to see prisoners in restraint when they are in a position where they could escape. *Cassal*, 48 Wis. 2d at 625, 180 N.W.2d at 611. Moreover, it was within the authority of the police to determine the extent of restraint necessary for a defendant's transport. *Id.* Therefore, we conclude that the defendant's constitutional rights to a fair trial and the presumption of innocence were not violated.

As an indigent defendant, Clifton, though entitled to counsel,[2] was not at liberty to discharge his attorney. *See State v. Johnson,* 50 Wis. 2d 280, 283, 184 N.W.2d 107, 109 (1971). The issue of whether an appointed attorney should be substituted for another attorney lies within the discretion of the trial court. *State v. Haynes,* 118 Wis. 2d 21, 27, 345 N.W.2d 892, 896 (Ct. App. 1984). There must be evidence of good cause to warrant substitution of appointed counsel. *Id.* One ground for substitution is a complete breakdown of communication between defendant and counsel which leads to an apparently unjust verdict. *McKee v. Harris,* 649 F.2d 927, 931 (2d Cir. 1981).

The trial court did not abuse its discretion in denying substitution because Clifton's request was made on the morning of trial, because counsel was prepared for trial and documented his preparation, and because any conflict was self-induced by Clifton. *See Mulkovich v. State,* 73 Wis. 2d 464, 475–76, 243 N.W.2d 198, 204–05 (1976).

Also, Clifton failed in his duty to show good cause for a substitution. *See C.N. v. Waukesha County Community Human Servs. Dep't,* 143 Wis. 2d 603, 615, 422 N.W.2d 450, 455 (Ct. App. 1988). Our statement in *C.N.* puts this issue to rest: "The right to counsel cannot be manipulated so as to obstruct the orderly procedure of the courts or to interfere with the administration of jus-

---

[2] U.S. Const. amends. VI and XIV; Wis. Const. art. I, sec. 7; sec. 970.02(1)(b), Stats.

tice." *Id.* at 615–16, 422 N.W.2d at 455. Therefore, Clifton's constitutional right to counsel was not violated.

## ABSENCE AT TRIAL

Clifton was not present at two brief in-chambers conferences, both of which dealt with the courtroom security problem. At the close of the first day of trial, in-chambers, defense counsel told the trial court, in the presence of the assistant district attorney, about Clifton's statement that Clifton intended to "punch me out" and disrupt the trial. The court stated it would delay any remedial action until it could get Clifton's response the following day.

The second in-chambers meeting occurred first thing the following morning. The assistant district attorney, Cohen, and Sergeant Robert McDermott, from the Sheriff's Department, were present. The court said it would inform Clifton about the information concerning a disturbance and that a deputy would be deployed behind him. The court then informed Clifton about the reports and Clifton acknowledged understanding it. The deputy uncuffed Clifton, who remained orderly throughout the trial.

Under art. I, sec. 7 of the Wisconsin Constitution and the sixth and fourteenth amendments to the United States Constitution, an accused has the right to be present at trial. *May v. State,* 97 Wis. 2d 175, 186, 293 N.W.2d 478, 483 (1980). Clifton argues that his constitutional rights were violated by his absence at the two in-chambers conferences. We reject this argument because a conference in-chambers, without a defendant's presence, concerning a procedural matter, does not violate a defendant's constitutional rights. *Id.* "[W]hen a confer-

ence in chambers deals solely with a question of law or procedure, the defendant's absence does not constitute a denial of due process." *Id.*

The issues discussed pertained to the procedural matter of courtroom security. The court told Clifton about the gist of the conferences. His constitutional rights were not violated.

## EVIDENCE

Clifton asserts that the trial court abused its discretion in admitting certain items of evidence which were irrelevant. Counsel objected to the entry of certain documents and the reading of inventoried items that were found in the police van. The van was clean when Clifton entered it, but certain documents were strewn about when he left. Certain items, to which objection was not taken, were concededly Cassel's property:

(a)  a Metro-Milwaukee Auto Auction card;
(b)  a Greater Chicago Auction card;
(c)  an Auto Dealers Exchange card;
(d)  a Wisconsin driver's license;
(e)  fourteen business cards;
(f)  a check for $500 drawn on Ozaukee Auto Sales, Inc. to Essie Mae Newsom; and
(g)  one black auto book.

The officer also read from the inventory list credit cards and checks belonging to Peggy Luckett, a credit card naming Marion F. Nordstrom, and a Milwaukee County Parks identification card issued to Jacqueline Fowler. Clifton urges that reference to these items was error because they did not relate to his case and because

the jury could speculate about them. Therefore, he alleges that the error prejudiced his rights.

Whether to admit evidence is within the discretion of the trial court. *State v. Wollman,* 86 Wis. 2d 459, 464, 273 N.W.2d 225, 228 (1979). To uphold a discretionary decision there must be evidence in the record that discretion was in fact exercised and the basis for that exercise. *State v. Hutnik,* 39 Wis. 2d 754, 764, 159 N.W.2d 733, 738 (1968). Because the trial court did not state a reason for exercising its discretion for admitting the items relating to persons other than Cassel, we must independently review the record to determine whether it provides a basis for the trial court's discretion. *State v. Pharr,* 115 Wis. 2d 334, 343, 340 N.W.2d 498, 502 (1983).

We conclude that evidence of other persons' papers was not relevant to the issue of Clifton's guilt. However, he is foreclosed from asserting error on appeal because he failed to make a timely objection. *See* sec. 901.03(1)(a), Stats; *State v. Gustafson,* 119 Wis. 2d 676, 683, 350 N.W.2d 653, 657 (1984), *aff'd,* 121 Wis. 2d 459, 359 N.W.2d 920, *cert. denied,* 471 U.S. 1056 (1985).

Furthermore, the error did not affect a substantial right. *See* sec. 901.03(1)(a), Stats. Clifton was arrested less than six hours after the offense with part of the loot still on his person. He was caught "red-handed." Because the evidence unequivocally established his guilt, and no substantial right of Clifton's was affected by admission of the evidence, we affirm the conviction.

*By the Court.*—Judgment affirmed.